## CITY OF DALLAS v. RUTLEDGE et al.
### (No. 8946.)

(Court of Civil Appeals of Texas. Dallas. Feb. 2, 1924.)

**1. Appeal and error ⬤➡781(1)—Case "moot" when question presented is abstract.**

A case is "moot" when the question to be determined is abstract, one that does not rest on existing facts or rights.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Moot Case.]

**2. Appeal and error ⬤➡781(2)—Suit to enjoin disconnection from sewer main held not rendered moot by incorporation of property in another town.**

A suit to enjoin a city from disconnecting a lot in an addition outside the city limits from a sewer main, to which connected pursuant to contracts with the city, held not rendered moot by subsequent inclusion of the addition in the corporate limits of a town located between it and the city.

**3. Pleading ⬤➡147—When cross-action may be interposed stated.**

A cross-action may be interposed in equity whenever rights sought to be litigated, whether in regard to property or in personam, relate to, grow out of, or are directly connected with, the same thing or transaction.

---

**4. Pleading ⬤⟿147 — Dismissal of cross-complaint held error, in view of rule in favor of adjudicating rights of all parties in one suit.**

With respect to the right to maintain a cross-bill, the rule is that the law favors adjudication in one suit of the interests and rights of all parties in the subject-matter of the litigation.

**5. Courts ⬤⟿121(7) — Where court had jurisdiction of action for injunction, dismissal of cross-complaint for sum below jurisdictional amount held error.**

In a suit to enjoin a city from disconnecting premises from a sewer main for nonpayment of rentals, the court erred in dismissing the city's cross-action against plaintiff for rentals due, though the amount claimed was below the court's jurisdiction.

**6. Pleading ⬤⟿149 — Mutuality of claims essential to prosecution of cross-demands between codefendants.**

Mutuality of claims or debts both as to quality of right and identity of the parties is essential to prosecution of cross-demands between codefendants.

**7. Courts ⬤⟿121(7) — City's cross-bill for sewer rentals against grantor of plaintiff, suing to enjoin sewer disconnection, held properly dismissed.**

In a suit to enjoin a city from disconnecting plaintiff's house from a sewer main for nonpayment of rentals due under a contract with plaintiff's grantor, who was made a defendant by plaintiff, and sought no relief against the city, a cross-bill against him by the city for such rentals, which were less than the jurisdictional amount, *held* properly dismissed.

**8. Contracts ⬤⟿186(1) — Purchaser held not entitled to free sewerage service under contract with grantor.**

A purchaser of a lot from one contracting with a city for sewerage service at a stipulated annual rental *held* not to have obtained the right to free sewerage service, under the terms of his contract with grantor; the city not being a party to nor bound by it.

**9. Notice ⬤⟿2, 5 — "Actual notice" and "constructive notice" defined.**

"Actual notice" embraces all degrees and grades of evidence from positive proof to the slightest circumstance by which one is furnished means of knowledge, which, pursued diligently, will lead to knowledge of the ultimate fact, while "constructive notice" is a conclusive legal inference from facts, such as the notice imported by the record of instruments.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Actual Notice; Constructive Notice.]

**10. Vendor and purchaser ⬤⟿231(16) — Records of sewerage contracts between city, university, and landowner held constructive notice of contents to grantee.**

Records of contracts between a city and a university, and between the latter and an owner of land outside the city, relative to disposal of sewerage through the city's mains, and such owner's connection with and use of the sewer, *held* sufficient to import constructive notice of their contents, including payment of rentals for sewerage service, to such owner's grantee.

**11. Vendor and purchaser ⬤⟿230(1) — Purchaser must take notice of all instruments in chain of, or affecting, title.**

A purchaser of land must take notice of all instruments, recorded or unrecorded, in his chain of title or affecting the title, and is bound by all recitals therein, though in fact ignorant of the contents.

**12. Municipal corporations ⬤⟿712 — Lot owner's misconception of contract rights held not to prevent city from disconnecting sewer for nonpayment of rentals.**

That a lot owner's failure to pay sewer rentals to a city was due to misconception of his rights under his contract with his grantor will not prevent the city from disconnecting the sewer because of his default.

**13. Appeal and error ⬤⟿1175(7) — Rule stated as to when appellate court should render judgment court below should have rendered.**

Where there are no facts to be ascertained, and the matter to be decreed is certain, it is the duty of the appellate court, on reversing a judgment, to render such judgment as the court below should have rendered.

Appeal from District Court, Dallas County; Royall R. Watkins, Special Judge.

Suit by W. J. Rutledge, Jr., against the City of Dallas and others. From a judgment against the City and other defendants, the City appeals. Affirmed in part and reversed and rendered in part.

J. J. Collins and Allen Charlton, both of Dallas, for appellant.

J. C. Muse, Jr., and A. W. Walker, Jr., both of Dallas, for appellees.

LOONEY, J.　The plaintiff, W. J. Rutledge, Jr., filed this suit against the city of Dallas, its mayor, board of commissioners, secretary and collector of the water and sewerage departments, A. W. Walker, and F. G. Van Valkenberg, for the issuance of an injunction to prevent his premises from being disconnected from the sewer main in the alley to the rear of his lot. Plaintiff won in the court below, and the city has appealed.

The facts material for our consideration are these:

On March 8, 1914, the city of Dallas and the Southern Methodist University made a contract under which the University was given the right to run a sewer main from its location several miles north of Dallas to connect with the sewer system of the city, with the right to have its sewerage, and the sewerage of the adjoining residence district emptied into and carried through the mains of the city system to its disposal plant. Among other things, it was provided that there should be no connection with the University system without permit from the city.

A charge of $4 per annum was stipulated for each house connected with the system, to be paid to the city. A failure to pay the rental was ground for forfeiture, and gave the city the right to disconnect the premises of the person in default—in fact, the city reserved the right to disconnect the University system for any reason deemed sufficient by the city commissioners. The contract also provided that additions adjacent to the University system should be permitted to connect and make extensions therefrom, by procuring consent of both the University management and the city.

The defendant A. W. Walker owned an adjacent addition known as "Third Installment of Mt. Vernon Addition," located beyond the city limits. On April 14, 1914, as was comprehended by the contract above mentioned, Walker made a contract with the University, under the terms of which the University was to lay its sewer main through the west edge of the Mt. Vernon addition, and was to lay 6-inch laterals in each of three alleys, subject to the condition that he should also procure permission from the city. The two contracts above mentioned were duly recorded in the deed records of Dallas county long prior to the purchase by the plaintiff of his lot from Walker as hereinafter mentioned.

In accordance with his agreement with the University, Walker obtained permission of the city to attach his addition to the University system, which gave him the right to flow the sewerage therefrom into and through the city mains and to its disposal plant. Among other things, it was provided that a rental of $4 per annum should be paid for each house in the addition connected to the University system, and the city reserved the right to revoke the permission at any time its commissioners deemed it advisable. It was further provided that the violation of any of the covenants of any of the contracts furnished ground for forfeiture. This latter contract was not recorded but was part of the files of the office of the city secretary. These three contracts are so related as to necessitate their being read and construed together in determining the respective rights of the parties. The University-Dallas contract foreshadowed and provided for the other two, and, in pursuance of its terms, the other two were executed, containing recitations showing their relation one to the other. The two last-mentioned contracts describe the addition with sufficient definiteness to put any one buying lots and making sewer connection with the University main on notice of the terms and conditions under which the city had granted permission therefor.

On May 21, 1919, plaintiff, by an executory contract between him and the defendant Van Valkenberg, agent for defendant Walker, contracted to purchase from Walker lot No. 25 in block No. 9, Mt. Vernon addition.

The seller obligated himself, among other things—

"to lay water mains convenient to all lots and furnish an adequate water system; to furnish adequate sanitary sewer service, and place gas in alley at Fairfield avenue; all conveniences in alley."

Under date of May 22, 1919, Walker conveyed to plaintiff the lot described above by general warranty deed in form, except the same contained the following provision, to wit:

"Seller reserves the right to use the street and alley adjoining the property herein conveyed for street railway, for gas, water and sewerage pipes, and for electric light, telephone and telegraph poles and wires, as he may find necessary."

On or about September 18, 1919, plaintiff connected his house with the sewer in the alley in its rear, but without procuring a permit from the city. The plaintiff has since used the sewer service, but has refused to pay the $4 annual rental; and, because of such failure, the city commissioners of the city issued instructions that his premises be disconnected from the sewer line in the alley, and the same would have been disconnected but for the issuance of the injunction in this case.

The plaintiff based his cause of action on the terms of the executory contract entered into with Van Valkenberg, agent for Walker, mentioned above. His contention is summed up in a few words quoted from his testimony, as follows:

"I consider the written agreement between Van Valkenberg and myself as introduced in evidence has the legal effect of agreeing to furnish me this sewer service without charge, and I do not recognize the right of the city of Dallas to charge me anything for the sewer service, and I claim the right to continue to use the same as I am now using it."

The city contends that, under the contracts, it had the right to disconnect plaintiff's premises, and to cease to furnish sewer service; that plaintiff by his failure to pay the rental had forfeited all rights; that he did not come into court with clean hands, and could not invoke the equity powers of the court. The city also in a cross-bill sought to recover the delinquent sewer rentals amounting to $14 from both the plaintiff and the defendant Walker, under whom the plaintiff claimed, and who, under the terms of his contract with the city, made himself secondarily liable for the payment of all sewerage rentals. The defendant Van Valkenberg filed no answer.

The court sustained special exceptions urged by defendant Walker to the plaintiff's complaint against him, and dismissed the same; and also sustained special exceptions urged by the plaintiff and the defendant Walker to the cross-bill of the city against

them for the recovery of the delinquent sewer rentals and dismissed the same, to which action of the court the city excepted.

On trial, after hearing the evidence, the court entered judgment in favor of plaintiff against all defendants except A. W. Walker, perpetually enjoining the city and the other defendants from interfering with the plaintiff's sewer connection. The defendants, the city and her officials, excepted and prosecute this appeal.

The appellee Rutledge has filed a motion in this court to dismiss the appeal on the ground that the questions involved have become moot by reason of the following facts: That at the time the controversy arose the lands in Mt. Vernon addition, including plaintiff's lot, were not in any incorporated town or city; that the town of Highland Park intervened between said addition and the city of Dallas, and that, pending the suit, Highland Park, a municipal corporation, extended its corporate limits so as to include that part of Mt. Vernon addition containing plaintiff's premises; that the sewer lines involved are located entirely within the corporate limits of the town of Highland Park and are under its jurisdiction.

[1, 2] It is shown by affidavit and exhibits attached to the motion that Mt. Vernon addition, including plaintiff's premises, is now a part of the town of Highland Park. This fact, in our opinion, will not render this case moot. A case is said to be moot when the question to be determined is abstract, one that does not rest upon existing facts or rights. In the case under consideration, the relations of the plaintiff and the city of Dallas have not changed since, or because of, the fact that Mt. Vernon addition has been taken into the town of Highland Park. The conditions out of which the suit grew are the same as when the suit was originally filed; the rights of the parties under the University-Walker-Dallas contracts, hereinbefore referred to, are the same to-day, unaffected by the incorporation of Mt. Vernon addition as a part of Highland Park, as they were when the contracts were executed.

The motion to dismiss is therefore overruled.

The assignments of error and their related propositions are quite numerous, and may be summarized and reduced as follows:

(1) The appellant contends that, as the court below obtained jurisdiction of plaintiff's suit for injunction, it also had jurisdiction of its cross-action for judgment against plaintiff and the defendant Walker for the unpaid sewer rentals, and that the trial court erred in sustaining exceptions and in dismissing the same.

(2) Appellant contends that the plaintiff, having purchased his lot and appendant easement, that is to say, the right to connect with, and flow his sewerage through the University main, with notice, actual and constructive, of the contents of the University-Dallas-Walker contracts, impliedly assented to the terms thereof, is bound thereby, and that the court erred in enjoining the city from disconnecting plaintiff's premises from the sewer line on his refusal to pay sewer rentals according to the terms of the contracts.

(3) Appellant contends that the executory contract of sale between Van Valkenberg, agent for Walker, and plaintiff, in which the seller agreed to furnish plaintiff "an adequate sanitary sewer 'service," even if given the meaning claimed by plaintiff, does not in any way affect the rights of the city or justify the contention of plaintiff; hence, the trial court erred in construing the contract so as to give the plaintiff, as against the city, the unrestricted right to flow his sewerage through the city's sewer mains free of charge.

(4) Appellant further contends that the plaintiff, being bound by the terms of the contracts between the University and the city and A. W. Walker and the city, and having impliedly agreed to pay the city the sewer rental for the service enjoyed by him, and having refused the city had the right to disconnect his premises from the system, and to enjoin him from emptying his sewerage into the University and city sewer systems and that the court erred in dismissing the city's cross-bill for injunction against plaintiff and in rendering judgment for the plaintiff.

[3-5] We are of the opinion that appellant's contention that the court below committed error in dismissing its cross-bill against the plaintiff is correct. The contention is based on the equity doctrine that permits the interposition of a cross-action whenever the rights sought to be litigated, whether in regard to property, or in personam, relate to, grow out of, or are directly connected with the same thing or transaction.

This suit grew from an effort on the part of the city of Dallas to collect from plaintiff past-due sewer rentals. Plaintiff refused to pay, and the city commissioners ordered his house disconnected from the sewer line. To prevent this, the plaintiff brought the suit for injunction. It thus appears conclusively that the city's claim for sewer rentals, set up in its cross-action against the plaintiff, is related to, grew out of, and is directly connected with, the transactions upon which plaintiff bases his suit.

The settled law of this state is in favor of adjudicating in one suit the interests and rights of all parties in the subject-matter of litigation. In the early case of Bradford v. Hamilton, 7 Tex. 55, the Supreme Court used this language:

"The doctrine * * * is this: If the defendant has a cause of action against the plaintiff, touching the subject-matter of the suit, he may set it forth in his answer, and have the legal redress against the plaintiff, to which he is entitled, in the same manner, and to the same extent, as if he were originally plaintiff."

The doctrine is stated in Townes' Texas Pleading (2d Ed.) p. 558, as follows:

"There are also pleas in reconvention which are admitted under the equity jurisdiction of the court. If a suit is brought to enjoin a judgment, it is always permissible for the defendant in the injunction proceedings to set up the claim upon which the judgment was based and recover a judgment on it. Or if damages are occasioned by the suing out of the wrongful injunction, this may be set up by the defendant in the injunction suit by way of cross-action. Again, in cases of fraud in the sale of property, the purchaser can in proper time and manner rescind the sale and recover the purchase money, or he may keep the thing and offset the damage occasioned by the fraud against the price."

In Cooksey v. Jordan (Tex. Civ. App.) 140 S. W. 1175, the court said:

"It is contended by the appellant that the counterclaims * * * were less than $500, * * * and, after excluding the claim for exemplary damages, the district-court is without jurisdiction to try them. This contention cannot be maintained. The petition of appellant for injunction gave the court jurisdiction. * * * Having obtained jurisdiction, the court retained it for the purpose of determining the whole controversy between the parties germane to the original cause of action."

In the case of Kelsey v. Collins, 49 Tex. Civ. App. 234, 108 S. W. 795, the court used the following language:

"The suit having been brought by plaintiff in the district court on a demand within its jurisdiction, the court had jurisdiction of defendants' cross-bill to recover the overpayment, although it was less than $500 in amount [citing certain cases]. If appellant's contention under this assignment were correct, a defendant could not plead a payment or any counterclaim to an action brought against him in the district court, unless the amount of such payment or counterclaim exceeded $500."

The following cases are also in point: Eckford v. Knox, 67 Tex. 200, 2 S. W. 372; Moore v. Moore, 89 Tex. 29, 33 S. W 217; Sachs v. Goldberg (Tex. Civ. App.) 159 S. W. 92.

Therefore it is our opinion that the trial court erred in dismissing appellant's cross-action against plaintiff. Having jurisdiction of plaintiff's suit, the same extended to all matters connected with the subject-matter, and it is immaterial that the amount claimed in the cross-action was below the jurisdiction of the district court.

[6, 7] Appellant also contends that the court erred in dismissing its cross-action against the defendant A. W. Walker for the recovery of $14 sewer rentals accrued for the use of the sewer service by the plaintiff, for which, under the terms of the Walker contract, he is secondarily liable.

Walker was brought into the case by the plaintiff as one of the defendants; he sought no relief against appellant. The cross-bill against him was, in effect, a suit by appellant for debt in an amount clearly below the jurisdiction of the court. As to him the jurisdictional fact was lacking as he was not seeking any relief against appellant, and there was no fact on which to impinge jurisdiction to incidentally adjudicate the small claim for rentals. There did not exist a mutuality of claims, always an essential circumstance of cross-demands, as claims or debts must be mutual, both as to the quality of right and identity of parties.

This view is sustained in Hull v. First Guaranty State Bank (Tex. Civ. App.) 199 S. W. 1148. In that case the assignee of a draft, given for two cars of cotton seed, brought suit against the maker, the drawee, and the receivers of a railroad, for conversion of the seed. The receivers of the railroad, defendants, urged in a cross-action against the maker of the draft, also a defendant, a claim for $148, the amount of freight on the seed. The district court gave judgment in favor of the receivers. In reversing the judgment, the court said:

"This demand on the part of the receivers was neither a counterclaim nor an offset which might have been pleaded in this suit, but was an independent cause of action in favor of one defendant against a codefendant. It had no place in these proceedings."

We therefore hold that the court was not in error in dismissing appellant's cross-bill against the defendant A. W. Walker.

[8] Plaintiff's contention, that is, that he obtained the right to free sewerage service under the terms of the contract between him and Van Valkenberg, agent for Walker is not in our opinion tenable. Walker could not have granted a right in the sewerage service that he did not own. The city was in no sense a party to or bound by the contract between plaintiff and Walker, and, with reference to that contract, there existed no privity between plaintiff and the city. Plaintiff's right to connect with and use the sewer was derived from the University-Walker-Dallas contracts, and from no other source.

[9, 10] The question then is, Was plaintiff visited with notice of these contracts, and are they binding on him? This question, in our opinion, must be answered in the affirmative. Actual notice embraces all degrees and grades of evidence, from positive proof to the slightest circumstance, by which a party is furnished the means of knowledge, which, pursued diligently, will lead to a knowledge of the ultimate fact. Constructive notice, on the other hand, is a legal in-

ference, conclusive in its nature, established from facts, such as the notice imparted by the record of instruments.

The contracts between the city and the University, and between Walker and the University, were duly and legally recorded in the deed records of Dallas county long prior to the purchase of the lot of land by plaintiff from Walker. The record of these instruments was sufficient to impart constructive notice to the plaintiff of their contents (Peters v. Clements, 46 Tex. 123; Jackson v. Elliott, 49 Tex. 68), and from these he obtained the knowledge, or the means of knowledge, as to the contents of the contract between Walker and the city.

In addition to this, the connection with and the use by the plaintiff of the sewer should have provoked an inquiry on his part, which would have led him to full knowledge as to the ownership of the sewer line and as to the terms, conditions, and burdens connected with its use. Speaking, therefore, in terms of law, plaintiff must have known that he had no right to connect his house to the sewer line, save on the terms and conditions of these contracts. One of the obligations necessarily assumed by all persons using the sewer system was the payment to the city of an annual charge of $4 for the service, and, in case of default in payment, to suffer the penalty of being disconnected and deprived of the service.

[11] The law of notice is that a purchaser of land must take notice of all instruments recorded or unrecorded in his chain of title or affecting the title, and is bound by all recitals therein, although in fact ignorant of the contents. This doctrine was announced in Gilbough v. Runge, 99 Tex. 542, 91 S. W. 566, 122 Am. St. Rep. 659. In that case Runge sold land to Gilbough; the deed recited unpaid purchase-money notes, but the deed was never recorded. Gilbough afterwards sold the land to Bailey and Hampton, who had no knowledge of the deed. The court said:

"The title of Bailey and Hampton was held by them in subordination to the right reserved by Runge in the deed to Gilbough, and Bailey and Hampton were bound to take notice of the terms of the deed under which Gilbough held although it was not recorded and they actually knew nothing of it."

In the case of Loomis v. Cobb, 159 S. W. 307, the Court of Civil Appeals announced the doctrine in the following language:

"It is a familiar and thoroughly well-settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by recital, reference, or otherwise upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. The rationale of the rule is that any description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success."

In the case of Fresno Canal Co. v. Rowell, 80 Cal. 114, 22 Pac. 53, 13 Am. St. Rep. 112, it was held that where a purchaser of lands is informed that there is a water right connected therewith, and by inquiry he could have ascertained the burdens connected therewith, he is chargeable with knowledge thereof.

[12] Plaintiff's failure to pay the rentals to the city was evidently due to a misconception of his rights under the Van Valkenberg-Walker contract; this much is apparent from his testimony, but his mistake in this regard will not satisfy the demand of the city, nor stay its hand from disconnecting the sewer by reason of the default.

For the reasons hereinbefore indicated, the judgment of the court below is affirmed as to the defendant A. W. Walker and is reversed as to the defendants, the city of Dallas, the mayor, board of city commissioners, and the secretary and collector of the water and sewerage departments of the city.

The record shows that the plaintiff connected his premises with the sewer line on September 18, 1919. The annual charge therefor, according to the terms of the written contracts authorizing the connection and furnishing the service, was $4. The plaintiff, therefore, as shown by the record, was due the city on December 31, 1922, the date to which appellant made claim, the sum of $13.16.

[13] As there are no facts to be ascertained, and the matter to be decreed is certain, it is our duty to render such judgment as the court below should have rendered. Therefore judgment is now here rendered in favor of appellant the city, and the city officials hereinbefore named, dissolving the injunction issued against them by the trial court, and in favor of the city of Dallas against the appellee, W. J. Rutledge, Jr., for the sum of $13.16, with 6 per cent. interest per annum thereon from December 31, 1922, and all costs of appeal.

Affirmed in part, and reversed and rendered in part.