**FRIDH et al. v. GIBERSON & KEMPFF et al.   (No. 9299.)**

Court of Civil Appeals of Texas. Galveston.
June 28, 1929.

Rehearing Denied Oct. 24, 1929.

564

T. J. Stovall, Cole, Cole, Patterson & Kemper, and W. A. Combs, all of Houston, for appellants.

Levy, Levy, Barker & Kahn, of Galveston, for appellees.

LANE, J. O. A. Fridh and T. G. Burrows, on January 21, 1928, filed a suit in the county court of Harris county, Tex., the number of which is 26123, against Giberson & Kempff and K. G. Johnson, alleging that Fridh and Burrows had made an exchange of certain properties in the city of Houston, Tex., and that the exchange of said properties was effectuated and made by Giberson & Kempff, and that as a result thereof Fridh and Burrows agreed to pay Giberson & Kempff $400 for effectuating such exchange.

They further alleged that Johnson was asserting a claim to the $400, and further alleged that Johnson had nothing whatever to do with the exchange of properties, nor was he the procuring cause thereof, but, on the contrary, alleged that said exchange of properties was in truth and in fact made by Giberson & Kempff, and that said Giberson & Kempff were the procuring cause and efficient means of such exchange, for which they agreed to pay Giberson & Kempff $400. They deposited the $400 in the registry of the court, and prayed the court to determine to whom it belonged, as well as any other issues involved in the case.

To this suit Giberson & Kempff answered that Fridh and Burrows had exchanged their properties through their efforts, and that as a result thereof they agreed to pay Giberson & Kempff $400 for services rendered in effectuating such exchange, and which amount they agreed to accept, and for which they prayed judgment of the court.

K. G. Johnson, in answering the original suit of Fridh and Burrows, made no claim whatsoever to the $400 deposited in the registry of the court, but, on the contrary, by way of replication and cross-action, complained over and against T. G. Burrows, individually, alleging that Burrows had employed him to find a purchaser or exchange said properties belonging to Burrows, and that as a result of such employment he (Johnson) worked diligently, consistently, and efficiently in attempting to exchange the property, and finally did consummate an exchange thereof, and that he was the procuring cause

and efficient means of the exchanging of such property, for which he was entitled to 5 per cent. on the exchange value thereof on an express contract with Burrows. He further alleged, in the alternative, that, if he did not have an express contract and agreement with Burrows, he had an implied contract in fact, and that Burrows availed himself of his services, and that, as a result thereof, he (Johnson) was entitled to reasonable and customary compensation for services rendered to Burrows.

Johnson further alleged that he exchanged the property of Burrows with one O. A. Fridh and that he was acting as agent for both T. G. Burrows and O. A. Fridh with their consent, and that at and prior to said exchange of properties he (Johnson) made known to both Burrows and Fridh that he was acting as agent for both parties and that it was agreeable and acceptable to each; that said O. A. Fridh and T. G. Burrows connived and in collusion fraudulently attempted to defeat and defraud him out of his commission for the exchange of the properties, as was apparent on the face of the pleadings filed by Burrows and Fridh; that they connived and in collusion fraudulently agreed to pay Giberson & Kempff $400, as alleged in their petition, to the effect that Giberson & Kempff were the procuring cause and efficient means of said exchange of properties and that Johnson had nothing whatever to do with the same, in order that they might evade paying him the commission which they agreed to pay him. He prayed for judgment as against T. G. Burrows only, for $750 commission, and for general and special relief in law and in equity to which he might be justly entitled.

Subsequent to the filing of said answer by Johnson, and on the 2d day of February, 1928, he filed a separate and individual suit against O. A. Fridh, alleging that Fridh had employed him to find a purchaser or exchange Fridh's property for him, in consideration of which Fridh agreed to pay him 5 per cent. on the sale or exchange value thereof; that, subsequent to the making of said agreement with Fridh, he worked diligently, consistently, and efficiently on said exchange and finally did exchange Fridh's property for him; that he (Johnson) was the efficient means and the procuring cause of said exchange.

Johnson prayed for judgment as against O. A. Fridh only for 5 per cent. commission on the exchange value of said property or for $750, and for general and special relief in law and in equity to which he might show himself entitled.

O. A. Fridh answered Johnson's individual and separate suit, alleging that said exchange of properties was in truth and in fact effectuated by Giberson & Kempff, and further answered that Giberson & Kempff were the procuring cause and efficient means of such exchange, and, by reason of their effectuating

such exchange, Fridh and Burrows agreed to pay them $400. Fridh further alleged that Johnson had nothing whatever to do with the exchange of properties, and that Giberson & Kempff were the procuring cause thereof. Fridh prayed the court that Johnson take nothing by his suit, and that the court decree that Giberson & Kempff be entitled to the $400.

All parties filed appropriate pleadings in answer to the respective petitions, cross-action, and answers filed, with the exception of O. A. Fridh and T. G. Burrows, who never denied the allegations in Giberson & Kempff's answers and cross-action.

When the original suit (No. 26123), filed by Fridh and Burrows, was called for trial, it was agreed in open court by and between all counsels of record that the second and independent suit (No. 26195), filed by Johnson against O. A. Fridh, should be consolidated with the original suit in order that both suits might be disposed of at the same time and to avoid two separate trials, which was accordingly done, and the suits retained their identical numbers, style, and original status. All dilatory pleas, demurrers, and exceptions were waived by agreement of counsel in open court.

The two cases were tried to a jury in the county court No. 2 of Harris county, Tex., and, at the conclusion of the testimony, Giberson & Kempff presented a motion for an instructed verdict in cause No. 26123 on the pleadings and uncontradicted evidence, and asked the court in said motion to find as a fact from the pleadings and evidence that Fridh and Burrows agreed to pay Giberson & Kempff $400 as compensation for services rendered them respectively in effectuating an exchange of their properties, which motion was sustained by the court and the court announced that it would render judgment in accordance with such findings. Subsequently the court announced that it would render judgment in cause No. 26123 in accordance with its findings, and counsel for Fridh and Burrows requested the court to instruct the jury as to its said findings that it would render judgment in accordance therewith and that the issue in controversy between them and Giberson & Kempff, in so far as said $400 was concerned, was out of the case, and that the jury would only be called upon to answer the issues of fact submitted to them in writing upon the controversy between Fridh and Burrows on the one side and K. G. Johnson on the other, which the court accordingly did in compliance with their request.

The two cases were tried together and submitted to a jury upon special issues, in answer to which the jury found:

"(1) That appellee Johnson was the procuring cause and efficient means of the exchanging of the property belonging to appellant, O. A. Fridh.

"(2) That it was mutually agreed between appellant and O. A. Fridh and appellee Johnson that Johnson should receive five per cent. (5%) in the event appellee Johnson effected a trade of appellant's property.

"(3) That appellee Johnson was the procuring cause and efficient means of the trading of the property belonging to appellant T. G. Burrows.

"(4) That the reasonable value of appellee Johnson's services in procuring said trade of appellant Burrows' property was Seven Hundred Fifty ($750.00) Dollars.

"(5) That appellee Johnson at and prior to said exchange of properties belonging to appellants Fridh and Burrows made known to said parties that he was acting as agent for both and it was agreeable to each.

"(6) That appellee Johnson did not abandon said trade before it was finally closed."

Upon the pleadings, the findings of the jury, and the evidence, the court rendered judgment in favor of K. G. Johnson against O. A. Fridh for the sum of $750 in cause No. 26195, and in favor of K. G. Johnson against T. G. Burrows for the sum of $750 in cause No. 26123. It was also decreed that Giberson & Kempff recover from O. A. Fridh and T. G. Burrows the $400 placed by them in the registry of the court in cause No. 26123; that is, $200 from each of said parties.

It is recited in such judgment that *plaintiffs* O. A. Fridh and T. G. Burrows, and also M. M. Giberson and F. R. Kempff, composing the Giberson & Kempff Realty Company, and K. G. Johnson appeared in person and by counsel in cause *No. 26123*, and that *plaintiff* K. G. Johnson and defendant O. A. Fridh in person and by counsel appeared in cause No. 26195, and agreed in open court that the two causes might be consolidated, and that all parties waived all pleas in abatement, demurrers, and special exceptions filed by them respectively.

It is also recited in the judgment that, in addition to the findings by the jury, "the court found as a fact from undisputed evidence that plaintiffs O. A. Fridh and T. G. Burrows agreed to pay to defendants M. M. Giberson and F. R. Kempff, composing the co-partnership of Giberson and Kempff Realty Company, the sum of $400.00 as compensation for services rendered to them by said defendants in connection with the exchange of properties in question; that each plaintiff agreed to pay the sum of $200.00 to make up said $400.00, and that said agreed sum of $400.00 was by said plaintiffs paid into the registry of the court." And it is also recited therein that such decree is made a final decree in cause No. 26123, styled O. A. Fridh and T. G. Burrows v. Giberson & Kempff et al., and also in cause No. 26195, styled K. G. Johnson v. O. A. Fridh, said causes having been consolidated only for the purpose of avoiding two separate trials by agreement of counsel for the parties.

Subsequent to the rendition of the judgment, plaintiff Johnson made a remittitur of $375 or 2½ per cent. on the exchange value of the property involved in case No. 26123 on his judgment against defendant Burrows only.

Fridh and Burrows have appealed.

■■ By appellants' propositions 1 and 2 they contend, first, that the court was without jurisdiction to try the two suits together upon agreement of the parties, in that the matter in controversy in suit No. 26123 alone exceeded the jurisdiction of the trial court; and, second, that the matter in controversy in the combined suits greatly exceeded such jurisdiction.

Neither of the contentions can be sustained. Appellants brought suit No. 26123 jointly, deposited into the registry of the court $400. They alleged that Giberson & Kempff were the procuring cause of the exchange of the properties and that they had agreed to pay said parties $400 for their services in procuring such exchange, but that, after making such agreement, they were informed that K. G. Johnson was asserting that he was the moving cause which resulted in the exchange of such properties and was entitled to a commission from them. They asked the court to determine to whom the $400 so deposited should be paid. The undisputed evidence, as well as the pleadings of the plaintiffs, appellants here, show that appellants had agreed with Giberson & Kempff that they would pay Giberson & Kempff $400 for the services performed by them in the transaction, and that Giberson & Kempff agreed to accept such sum in satisfaction of their services. Appellee Johnson, being made a party defendant by the plaintiffs, answered. He made no claim to the $400 deposited in court, but by way of cross-action alleged that plaintiff Burrows had employed him to dispose of his (Burrows') properties, for which Burrows agreed to pay him a commission, and that, by reason of such employment and of his services, which resulted in the exchange of Burrows' property for certain properties belonging to plaintiff Fridh, he was entitled to judgment against Burrows for $750. The two sums, $400 and $750, were not so combined as to bring the subject-matter of the suit above the jurisdiction of the county court. Neither would the trial of the two suits, 26123 and 26195, by agreement of all parties to obviate two trials, destroy the jurisdiction of the trial court. Though the suits were tried together, they were adjudicated as separate suits.

In Brown v. Cates, 99 Tex. 133, 87 S. W. 1149, in an opinion by our Supreme Court, it was in effect held that, where there are several controversies between several litigants, which are legally distinct, the fact that the parties have seen fit to include all in one cause or suit does not make them dependent one upon the other so as to increase or diminish the amount in controversy above or below the jurisdiction of the trial court; that, where cases which are distinct are connected together for trial and each considered separately, the mere joining of them does not destroy the jurisdiction of the court in the event the two distinct and separate sums sued for by separate litigants would, when combined, exceed in amount the jurisdiction of the court. See, also, Hunt v. Johnson, 106 Tex. 509, 171 S. W. 1125.

■ That the trial court had jurisdiction to hear and determine the question involved in the suit as originally brought by the plaintiffs Fridh and Burrows, as well as the right of Giberson & Kempff to the $400 deposited into the registry of the court, as claimed by them in their cross-action, must be conceded.

Such jurisdiction being conceded, Johnson could not destroy or defeat such jurisdiction by filing his cross-action, though the amount claimed by him should largely exceed the jurisdiction of the court. In such circumstances the court would have no jurisdiction over the amount sued for in Johnson's cross-action, and it would be the duty of the court to dismiss the same for want of jurisdiction, but surely Johnson could not by his cross-action oust the court of its power to adjudicate the controversy, if any, relative to the $400, the basis of the suit as originally filed. But we are of opinion that the court had judicial authority to hear and determine the entire matter involved.

■ Appellants concede that there was a contention on the part of the defendants Giberson & Kempff that they were entitled to the usual commission, amounting to $600 for bringing about the exchange of certain properties, but that they had agreed with appellants that, in settlement of such claim, they would accept $400, and that appellants had agreed to pay said parties such sum for their services performed by them in the premises. They contend, however, that, after they had entered into such agreement with Giberson & Kempff, they learned that appellee Johnson was asserting that he was entitled to a commission for bringing about such exchange of said properties and that they then refused to pay Giberson & Kempff the $400, and brought this suit to have the court determine to whom the $400 which they deposited with the court should be paid.

As already shown, the court found, in addition to the findings of the jury, that appellants Fridh and Burrows agreed to pay Giberson & Kempff the sum of $400 as compensation for services rendered to them by said parties in connection with the exchange of the properties in question; and upon such finding withdrew the question of the liability of appellants to said parties from the consideration of the jury and rendered judg-

ment for Giberson & Kempff for the $400 which had been paid into court, and, having withdrawn such question from the jury, the court submitted to them such issues only as were raised by the cross-action of appellee Johnson.

By appellants' propositions 5 to 7, inclusive, they contend that the action of the court in awarding to Giberson & Kempff the $400, as it did, is error prejudicial to appellants. They contend that, after they learned that Johnson would claim a commission, they had a right to repudiate the agreement had with Giberson & Kempff to pay them $400 and make such payment depend upon a finding by a jury that Giberson & Kempff were the procuring cause of the exchange of the properties in question.

We overrule such contention. Appellants allege that the contract of sale or exchange of the properties in question was effected by Giberson & Kempff, and that there is now due from them to said parties commissions amounting to the sum of $400, which they are ready and willing to pay. The undisputed evidence supports these allegations; therefore the court did not err in the action complained of.

We are now brought to a consideration of the complaint of the judgment rendered in favor of appellee Johnson against the respective appellants.

By appellants' propositions 8, 9, 10, and 11, the contention is made that the findings of the jury that appellee Johnson was the procuring cause and efficient means of the trading of the properties belonging to the respective appellants Fridh and Burrows is contrary to and unsupported by the evidence, and therefore the judgments based upon such findings should be set aside.

The jury found that it was mutually agreed between Johnson and appellant Fridh that, in the event Johnson should effect a trade of the property of Fridh, Johnson should receive a commission of 5 per cent., and that, at the time and prior to the consummation of the exchange of the properties belonging, respectively, to Burrows and Fridh, Johnson made known to both of said parties that he was acting as agent for both of them, and that it was agreeable to such parties for him to so act, and that Johnson did act for said parties in consummating a trade of their properties and did not cease his efforts relative thereto before the trade was finally closed.

Appellants attack all of such findings as being so against the great weight and preponderance of the evidence as to be clearly wrong and to show that they were not based on the evidence but were the result of some improper motive, in that it was undisputed that, after the termination of the negotiations between appellants, negotiated by Johnson, no further efforts were made by Johnson to bring appellants together, and they met thereafter only by accident and through the efforts of another broker.

We are not prepared to hold that either the findings of the jury were unsupported by the evidence, or that they, or any one of them, were so against the evidence as to be clearly wrong. The undisputed evidence shows that appellants were first brought together and introduced by appellee Johnson, and that Johnson began the trade negotiations between the appellants. There was evidence that Johnson continued to negotiate with appellants, trying to bring about an exchange of their properties, up to the 21st of December, the day on which the trade was actually consummated.

Appellee Johnson, testifying relative to the various transactions and negotiations with the appellants in an effort to bring about the exchange of their properties, said:

"On November 7th I had a 'phone message on my desk to go out to McKinney Avenue to see Burrows. Mr. Fridh and I were friendly. * * * In fact, I had known Fridh for a long time, and he said 'Johnson, I want you to find me a buyer for that house.' I said, 'Well, I will try to find you a buyer.' On November 7th I said to Fridh, 'Do you want to take a ride with me?' and he said 'Yes.' So we went out to Mr. Burrows' residence and Mr. and Mrs. Burrows went out for a ride with me. Mr. Fridh was with me and I introduced them all and the very first house we went out to see was Mr Fridh's house.

"So we rode around all that afternoon. I took Mr. and Mrs. Burrows back home and Fridh was still with me and Mr. and Mrs. Burrows asked Mr. Fridh his name and number and jotted it down. A couple of nights thereafter Mr. Fridh and I went out to see Mr. and Mrs. Burrows. * * * A few days went by, and I kept in touch with Mr. Burrows constantly and also Mr. Fridh. I went out on Mr. Fridh's job quite frequently and asked him if he had heard any more from Mr. Burrows and he said that he had seen him several times. * * * So I kept in constant touch with Mr. Fridh regularly and often tried to reach Mr. Burrows.

"Along in December Mr. Burrows made a proposition and I submitted it to Mr. Fridh. That was the Six Hundred Dollar proposition. * * * So I told Mr. Fridh about it and he got all excited. I could see that he was very much excited. So on the 21st of December Mr. Burrows called me and says, 'Johnson, I have closed the deal with Mr Fridh today. I want to know if you can re-finance it.' That was Friday. * * * Saturday morning I went out to see Mr. Fridh and said, 'Have you heard from Burrows lately?' He said, 'No, I have not heard from Mr. Burrows,' although Burrows called me the night

before and said that they had closed the deal that day. So about the middle of December I went out there. I had a friend from Chicago visiting here. I went out and tried to talk to Fridh and he did not seem very much inclined to talk about business that morning and did not want to discuss this Burrows transaction at all. So from about the middle of December until the transaction was closed he did not want to discuss the transaction. It was along about December 1st that I learned that the Guardian had this contract. In fact, I talked to Mr Fridh about it in Mr. Stovall's office and Fridh told me he had signed up with a lumber company and forced him to contract with the Guardian. I had several other deals pending and Fridh got very much excited at that time. He said to go ahead and work and make a sale and if he had to pay two commissioners it did not make any difference, he wanted to get rid of that property.

"There was no lengthy discussion in Mr. Stovall's office. Mr Fridh said to go ahead and sell it. 'I have got to unload.' * * * I told him I was going to wash my hands of it. He says no you continue to work and 'I will take care of the commission.' * * *

"I believe at the time Mr. Burrows asked me who the property belonged to and I said, 'Mr. Fridh.' He (Burrows) did not make any objections to my listing his property for sale or exchange. Fridh and I went out and measured Burrows' property up. We went through one of the apartments and looked at the condition of the apartment. We notified Mr. Burrows that one apartment was vacant and he did not know anything about it. I discussed the commission with Fridh that he was to pay me. It was five per cent. (5%). I told him that and he never refused it. He certainly understood that. I kept in touch with Mr. Fridh and Mr. Burrows from the time I introduced Mr. Fridh to Mr. Burrows until the transaction was closed. I saw Fridh every two or three days with reference to this particular transaction. Up to the time I had this little controversy with Mr. Burrows, which has been referred to, we were friendly. He called me up regularly. * * * He let me know when they closed the deal. He called me up that night, the night of December 21st. He said, 'Well, we have closed the deal today. Can you re-finance it for me?' The next morning he made an appointment to meet me at the Second National Bank. When we met at the Second National Bank he asked me, 'Do you expect me to pay you a commission?' I said, 'Yes, certainly.' * * * During all of the time I was absolutely working on the transaction. In the last offer that was made between Burrows and Fridh, Mr. Burrows 'phoned me and says, 'I will offer Fridh Six Hundred ($600.00) dollars cash money.'"

Appellant Burrows testified: "In response to my call Mr. Johnson came out to see me and talked to me with reference to disposing of my property in exchange or sale. Subsequent to that conversation we went out and looked at Mr. Fridh's property. Mr. Johnson introduced me to Mr. Fridh at my house. Then we went out and looked at Mr. Fridh's house and he introduced me to Mr. Fridh. That was before I ever heard of Mr. Giberson. I called him (Johnson) up before the deal was closed and asked him about getting some money. The piece of property Mr. Fridh owned which Johnson showed me was the piece of property I traded for."

Though there was some conflict in the evidence tending to support the findings of the jury and the judgment rendered and that offered by appellants to support their theory of the case, it cannot be said that there was insufficient evidence to support such findings and judgment, or that such findings were so against the weight of the evidence as to be clearly wrong.

Appellants requested the court to give to the jury the following charge: "If you have answered that K. G. Johnson was acting as the agent of both Fridh and Burrows, and was to receive commissions from both, then state whether or not this arrangement was with the knowledge and consent of both Fridh and Burrows."

The court refused such charge and appellants present such refusal as reversible error.

Issue No. 6 submitted by the court in its main charge was as follows: "Did K. G. Johnson at and prior to said exchange of the properties belonging to T. C. Burrows and O. A. Fridh make known to said parties that he was acting as agent for both of said parties, and was it agreeable to each?"

The court did not err in refusing the requested charge, as the inquiry there made was practically and sufficiently submitted by the charge of the court.

We have considered the contentions made by appellants in the remaining propositions, and overrule them as being without merit.

For the reasons above expressed, the judgment is affirmed.

Affirmed.