### MORITZ v. BYERLY et al.
### No. 9491.

Court of Civil Appeals of Texas. Austin.
Jan. 10, 1945.

Rehearing Denied Jan. 31, 1945.

On Rehearing Feb. 1, 1945.

and payable to Croft, Mrs. Byerly's deceased former husband, the full ownership of which notes passed to Mrs. Byerly by inheritance. Moritz pleaded four items, two of advances to Croft and two sums paid for his account at his request as credits upon the notes. These items were allowed by the court and are not here in controversy. Additionally Moritz pleaded only by way of. set-off two items, $175 and $32.50, respectively; the first being traveling expenses of Moritz incurred at the request of Mrs. Byerly and upon promise of reimbursement, in accompanying 'Croft's body from Houston, Texas, to Wellsville, Ohio, for burial at the latter place; and the second being the balance due on a note of Mrs. Byerly, secured by chattel mortgage on a watch which she had purchased from a jeweler, the note and mortgage having been purchased by Moritz from the payee. Exceptions to the jurisdiction were sustained as to these two items, after the court had heard all the offered testimony; and judgment was rendered in favor of Mrs. Byerly for $407.55, being the balance due on the notes after allowing the first four stated credits, but disallowing the two other items. Moritz has appealed assigning as error this action of the court in sustaining these exceptions to the jurisdiction as to these two items.

Moritz states in his brief that in sustaining the plea to the jurisdiction as to the two items in controversy, the trial judge expressed the view "that whatever the law may have been prior to the adoption of the New Rules, the defendant is now precluded by Rule 97 from invoking a set-off or counter claim unless same is in such amount that an independent suit can be brought thereon in the same court." However, Mrs. Byerly asserts in her brief that she does not and never did contend that the New Rules changed the law in any respect as regards jurisdiction "for the simple reason that the jurisdiction of the district court is fixed by the Constitution of Texas, and is immutable except by the Constitutional method of amendment * * * and the Supreme Court has never usurped that power." Not only is this proposition correct, but it is clear from the act conferring rule-making power on the Supreme Court, Art. 1731a, Vernon's Ann.Civ.St., that only matters of "practice and procedure" were included in the act, and that substantive rights were expressly excluded therefrom. Furthermore, in order to remove

Sedberry & Williams and R. P. Amacker, all of San Angelo, for appellant.

Clyde Vinson, of San Angelo, for appellees.

## McCLENDON, Chief Justice.

This appeal involves the sole question whether a court (here the district court) has jurisdiction of a counterclaim which is in amount below its minimum jurisdiction, the counterclaim not arising out of the same transaction as plaintiff's claim, but being of the general character warranting set off; and being pleaded only by way of set-off, without prayer for affirmative relief. The facts are these: The suit was by Mrs. Byerly (her husband joining her pro forma) against Moritz upon two promissory notes for the principal sum of $250 each, besides attorney's fees, executed by Moritz

this specific matter entirely from any field of doubt, Rule 816 expressly provides that: "These rules shall not be construed to extend or limit the jurisdiction of the courts of the State of Texas * * *."

Rule 97 is a procedural rule only, having reference to joinder in one suit of causes of action by way of counterclaim and cross-action. It introduced some new features and otherwise liberalized our practice in these respects. In so far as the word jurisdiction is used therein, it is but declaratory of existing law. The general purpose of the rule is to broaden rather than restrict the right of counterclaim and cross-action. Since we are concerned here only with the question of jurisdiction analysis of Rule 97 is foreign to our inquiry.

The exact question presented is one which apparently has seldom arisen in other jurisdictions; and (so appellee contends) has never been adjudicated in this state. We are clear in the view, however, that it was adjudicated in, and the present appeal is ruled by the decision in Garrett v. Robinson, 93 Tex. 406, 55 S.W. 564. The contention of appellee is that the counterclaim note there arose out of the same transaction as the note sued on, and therefore fell within a different classification from that at bar, where there is no connection between the note sued on and the set-off claims. There were two appeals in the Garrett suit and two opinions by Courts of Civil Appeals. The first appeal was decided by the San Antonio Court, Judge Neill writing, 43 S.W. 288, 289; the second was decided by the Galveston Court, 54 S.W. 269, 270, Judge Gill writing. The suit was by Sam Robinson, minor son of D. T. Robinson, upon a note for $300, and to foreclose a vendor's lien on land securing it, executed by Garrett in favor of the father and endorsed by him to the son. The counterclaim note was for $349, executed by the father in favor of Garrett. The latter contended that the transfer to the son was fictitious, without consideration, after maturity, and in order to defeat the right of set-off. The father eventually became a party plaintiff and the controversy, as it finally developed, was between the father and Garrett. From the first opinion it appears that Garrett and the father "were partners in exploiting a rat trap, on which the former had obtained a patent, and, as such partners, had acquired certain lands upon which the lien is claimed in this case. The note described in the answer of appellant (Garrett) was made to him by D. T. Robinson and wife for Robinson's part of the cash advanced the partnership by appellant for the purchase of some of the lands. This note appellant has held from the date of its execution until the case was tried. The contention of D. T. Robinson, by his pleadings and upon the trial, is that this note was satisfied and extinguished by the sale of the lands for which the note sued on was executed, and that its satisfaction was a part of the consideration received by Robinson for the sale of the land to Garrett." This seems to have been the only real controversy between the parties, namely whether the counterclaim note had been paid as a part of the consideration for the land conveyed to Garrett. The question of jurisdiction over the cross-action was not raised in the first appeal. Garrett lost in the first trial, and in that appeal there was a reversal in his favor on the ground that the evidence was not sufficient to show satisfaction of the counterclaim note as alleged. In the second trial Garrett was successful in having the counterclaim note offset against the note sued on and in recovering the excess balance in his favor. Jurisdiction of the cross-action was raised for the first time on that appeal, and the question presented was thus stated: "Whether the district court, having jurisdiction of appellants' demand by reason of the asserted vendor's lien, has jurisdiction of the $349 note pleaded in offset; the latter note being in amount beneath the jurisdiction of the court, *and possessing no quality otherwise which* would confer jurisdiction." (Emphasis added.) The opinion is an able one, reviewing at length all Texas cases bearing upon the subject, asserting that the particular question was one of first impression in this state, and holding that the district court had no jurisdiction of the counterclaim, in the absence of a showing upon pleading and proof that Robinson was insolvent. The cause was remanded in order to permit Garrett to make such showing. This was prior to the time the Supreme Court had jurisdiction of remanded causes, and writ of error was granted "on the ground that the judgment of the court of civil appeals practically settled the cause, applicants stating that they could not show the facts held essential by that court to entitle them to enforce their claim." [93 Tex. 406, 55 S.W. 565.] We think it is quite clear from the opinions of both courts that the issue presented was solely that of jurisdiction of

a counterclaim below the jurisdiction of the court and not connected with plaintiffs' claim in such a way as thereby to give jurisdiction. That the Court of Civil Appeals so regarded and treated the counterclaim is evidenced by the following from the above quotation: "and possessing no quality otherwise which would confer jurisdiction." The counterclaim note constituted a completed transaction wholly apart from the vendor's lien note, and wholly disconnected therewith other than under Robinson's contention that it was discharged as being a part of the consideration for the land upon which the vendor's lien was sought to be foreclosed. That contention was solely a matter of defense to the counterclaim note, in effect a plea of payment, and had no relation to the issue of jurisdiction of the counterclaim. The two notes were entirely separate and distinct transactions, each complete in itself and constituting a separate and distinct cause of action. Robinson borrowed money from Garrett to buy land and gave Garrett his note therefor. Later Garrett bought the land from Robinson and gave his note, secured by vendor's lien, in part payment thereof. The fact that the money borrowed by Robinson was used in the purchase of land he later sold to Garrett created no legal connection between the two transactions. Garrett did not even claim any such connection, but rather repudiated it. The following is quoted from the reporter's notes of his propositions in support of his application for writ of error: "Both claims being liquidated and past due and in the same right, even though appellants had not waived their right to object, they would be available one against the other *equally as though they had grown out of the same transaction.*" (Emphasis added.) In passing upon an issue (not here involved) in connection with the charge, the Supreme Court stated: "Under the charge, one of two verdicts must have been rendered, viz.: (1) In favor of plaintiff Sam Robinson against defendants for the amount of the note sued on, and foreclosure of lien, if the note pleaded in set-off had been paid; (2) in favor of defendants against D. T. Robinson for the balance of the set-off, after deducting the amount of the note sued on, if the first-named note had not been paid."

This clearly shows that the Supreme Court regarded the two notes as entirely separate and distinct causes of action, and treated the claim of Robinson that the amount of the set-off note was included as a part of the consideration for the land, as a plea of payment pure and simple.

The question of jurisdiction of the counterclaim was disposed of by the Supreme Court in the following language: "The jurisdiction of the district court over the cause of action asserted by the plaintiff included the power to determine any matter of defense which the law entitled the defendants to plead against it. The set-off was a defense, which, if established, defeated plaintiffs' right to recover. This jurisdiction was a part of the power to pass upon plaintiffs' claim and it was not essential to it that the offset pleaded should have been large enough in amount to have given the court jurisdiction of it in an independent suit to recover the debt. It is equally true that, being invested with jurisdiction to determine plaintiffs' cause of action, the court had the incidental power to determine the whole question of indebtedness between the parties, and to render judgment in favor of him in whose favor a balance was found to exist. Rev.St. arts. 750–752."

■ These articles were carried forward into the 1911 codification as Arts. 1325, 1326, and 1327; and into the 1925 codification in substance in Art. 2015. The cited articles do not relate to counterclaims growing out of the same transaction. That article was 755 in R.S.1895, 1330 in R.S.1911, and 2017 in R.S.1925. Judge Williams, who wrote the opinion of the Supreme Court in the Garrett case, was one of the clearest thinkers and most accurate writers who have ever sat upon that bench. It is inconceivable that he would have predicated his decision in any degree upon a holding that the two notes grew out of the same transaction, without so stating in his opinion and citing Art. 755 expressly bearing upon that subject. We can but conclude that the instant case is ruled by the decision in that case.

Even were we of the view that the two notes in the Garrett case grew out of the same transaction, and that the question at bar was one of first impression in this state, we would reach the same conclusion, for the following reasons: Art. 755, R.S.1895, was not a jurisdictional, but merely a procedural (joinder) statute. It neither enlarged nor diminished the jurisdiction of any court, but merely excepted from the general rules of misjoinder (such as tort and contract, liquidated and unliquidated, etc., claims) counterclaims growing out of the same

transactions. Hence a counterclaim in amount beyond the court's jurisdiction, although growing out of the same transaction as plaintiff's claim, is not brought within such jurisdiction by Art. 755.

We are not concerned here with those cases in which one defendant, against whom plaintiff asks no recovery, seeks to have adjudicated an independent claim against plaintiff below the court's jurisdictional amount (Higgins v. Standard Lloyds, Tex. Civ.App., 149 S.W.2d 143), or where one defendant seeks to have adjudicated a like claim against a codefendant (City of Dallas v. Rutledge, Tex.Civ.App., 258 S.W. 534).

■ The general rule upon the question at bar is thus stated in 21 C.J.S., Courts, p. 84, § 66, subd. b: "In general a court which has jurisdiction of the plaintiff's claim has jurisdiction of an offset, although it is below the court's minimum jurisdiction."

To the same effect is the following from 14 Am.Jur., p. 416, § 221: "The mere fact that the amount set up in a cross bill of the defendant is less than the jurisdictional amount does not deprive the court of jurisdiction where, from the whole record, it appears that the amount in dispute is within the jurisdictional limit."

■ Appellant asks that judgment be here rendered upon the disallowed counterclaims by reducing the plaintiff's recovery to the extent of their amount; asserting that these claims were established by uncontradicted evidence. The evidence in their support came from defendant alone; the plaintiff offering no proof in rebuttal, but stood on her plea and objection to defendant's supporting testimony, based on asserted want of jurisdiction of the counterclaims. It does not appear, therefore, that the case has been fully developed on this issue, and the proper practice is to remand for trial thereon.

In so far as the trial court's judgment establishes the balance due on the notes sued upon after deducting the allowed credits, it is affirmed. In so far as it sustained pleas or exceptions to the jurisdiction as to the two counterclaims of $175 and $32.50, respectively, it is reversed and the cause is remanded to the trial court for trial on that issue, and the rendition of appropriate judgment upon its adjudication. Costs of appeal are taxed against appellees.

Affirmed in part and in part reversed and remanded.

On Appellees' Motion for Rehearing.

The motion quotes the following excerpt from Higgins v. Standard Lloyds, Tex.Civ. App., 149 S.W.2d 143, 146 (referred to in our original opinion): "It is the established rule in this state that a defendant cannot, by filing a cross-action, counterclaim, or plea in reconvention, litigate a suit entirely different and foreign to the main action for an amount over which the court has no jurisdiction. Hardeman [& Son] v. Morgan, 48 Tex. 103; Fridh et al. v. Giberson, Tex.Civ.App., 21 S.W.2d 563; Dawson v. Duffie, Tex.Civ.App., 191 S.W. 709."

Taken in the abstract and removed from its context, the excerpt seemingly supports appellees' contention. The court did not, however, have before it the issue we have here. The suit there was upon an automobile insurance policy in which a third party was joined as codefendant with the insurer, upon the allegation that he was claiming some interest in the policy. This third party attempted to litigate, by way of asserted cross-action, a claim below the jurisdiction of the court, which he had against the plaintiff. The latter was asserting no claim against the third party, consequently the issue of set-off was not involved. Nor do the cited cases support the broad implications of the quoted excerpt.

In the Hardeman suit the district court had lost jurisdiction over the amount in controversy by reason of the adoption of the Constitution of 1876, vesting such jurisdiction in the justice court, and passage of a statute transferring all such cases to the justice courts before the cross-action which was within the jurisdiction of the district court under the 1876 Constitution had been filed. It was held that the only power the district court then had in the matter was to order the case transferred to the justice court.

The holding in the Fridh case was simply that the amount of plaintiff's claim could not be added to that of the cross-action so as to defeat jurisdiction over the latter.

The following quotation from Chief Justice Fly's opinion in Dawson v. Duffie [191 S.W. 710] states the holding therein: "The object of the cross-action was to cancel a mortgage on land, to remove cloud from title to land and for a writ of possession. In other words appellants sought to prosecute an action in trespass to try title in the county court. The county court had no jurisdic-

tion of such a suit and the court properly struck it out."

In Gimbel v. Gomprecht, 89 Tex. 497, 35 S.W. 470, cited in the motion, it was held that defendant could not litigate in the county court a counterclaim beyond that court's jurisdiction by crediting thereon the amount of plaintiff's claim.

Also cited in the motion is McConnell v. Frost, Tex.Civ.App., 45 S.W.2d 777 (Judge Alexander, then of the Waco court, writing). The holding there was that where the suit was by several plaintiffs, each of whom had a separate claim against a common defendant, no one of which claims was within the court's jurisdiction, the aggregate of all the claims could not be taken to confer jurisdiction, even though each of the claims was secured by mechanic's lien upon personal property, value of which was not alleged so as to show jurisdiction thereof in the court. It had previously been held in Pettus v. Weyel, Tex.Civ.App., 225 S.W. 191, that jurisdiction of a claim held by one party could not be acquired by joining in the same suit the claim of another party which was within the court's jurisdiction, even though the two claims grew out of the same transaction. The suit there was by the father for himself in an amount below the court's jurisdiction, and as next friend for his minor son, in an amount within such jurisdiction, for personal injuries inflicted on the son. To the same effect is the recent case of Long v. Wichita Falls, 176 S.W.2d 936, Chief Justice Alexander writing for the Supreme Court.

On the other hand, it was held in the early case of Ferguson v. Culton, 1852, 8 Tex. 283 (Chief Justice Hemphill writing), quoting from the syllabus: "Where a creditor has several notes against the same debtor, though they be all due, and in the same right, being each within the jurisdiction of a Justice of the Peace, but in the aggregate exceeding that jurisdiction, a suit may be brought before a Justice of the Peace upon each of them, or a suit may be brought upon them in the aggregate in the District Court."

The opinion reads: "There can be no doubt that the suit was properly brought before the magistrate; and there can be as little, that the plaintiff, at his option, might have sued upon them in the aggregate, in the District Court. The point is too plain to require illustration or authority."

It may not be possible to reconcile the holdings in all of these several cases by applying any general abstract principle. We have cited them as illustrative of the application of apparently irreconcilable principles to different factual situations.

It has been the policy in this state from the earliest times to avoid multiplicity of suits. That was the underlying basis for our joinder statutes (Arts. 750–755 R.S. 1895) which were first enacted in 1840. They applied to actions at law this salutary objective which courts of equity had theretofore applied under more restricted circumstances. See Gulf, C. & S. F. Ry. Co. v. Pearlstone, 53 S.W.2d 1001. It is applied in that class of cases which authorize joinder as against a plea of privilege (venue) of claims as to which venue would not otherwise lie in the county where suit is brought, with a claim as to which such venue does lie. Middlebrook v. David Bradley Mfg. Co., 86 Tex. 706, 26 S.W. 935, and numerous subsequent cases following its holding. We see no distinction in principle between entertaining jurisdiction of a claim below the court's jurisdictional amount when pleaded by way of set-off "as a matter of defense" in order to adjust the respective liabilities of the parties and thereby avoid a multiplicity of suits, and the joinder by plaintiff of a claim below the jurisdiction of the court for a like objective. This was the express holding in Garrett v. Robinson—a holding essential to the decision reached.

The motion is overruled.

Overruled.