### JOHN T. WHALEY V. BANKERS' UNION OF THE WORLD.

#### Decided May 10, 1905.

**1.—Corporations of Different States—Consolidation.**

Where corporations are created by different States, they can consolidate only under concurrent legislation of each State, and in such case, since the laws of the State have no extra–territorial effect, there is in law a separate and distinct corporation in each State.

**2.—Same—De Facto Corporation.**

An attempted consolidation when no statute authorizes it is a nullity, and can not, by user of corporate powers, become a corporation de facto, since it could not be a corporation de jure.

**3.—Same—Mutual Benefit Society—Equitable Estoppel.**

Where plaintiff's wife was insured for his benefit in a mutual benefit society which consolidated with the defendant association, by a proceeding which was void, defendant assuming payment of such society's obligations, plaintiff could not, upon the wife's death, base any claim against defendant upon the ground of equitable estoppel, since he had paid nothing to defendant, nor did it receive anything of value belonging to him or make any promise or agreement based upon any consideration with him. He can enforce his rights only against the receiver of the mutual benefit society, it being insolvent, when the receiver has recovered its assets erroneously turned over to defendant.

**4.—Same—Diversion of Benefit Fund—Presumption—Ultra Vires.**

In the absence of proof of the law under which appellee was incorporated it must be presumed that it comes within the fraternal beneficiary associations regulated by the statute of 1899, and is subject to the limitations therein prescribed, and hence a contract diverting its benefit fund to the payment of certificates issued by another corporation with which it had no lawful con–solidation would be ultra vires and void. Acts of 1899, p. 195.

Appeal from the District Court of Cooke. Tried below before Hon. D E. Barrett.

*Green & Blanton,* for appellant.—The court erred in refusing to submit the evidence to the jury and in instructing a verdict for the defendant, because the evidence tended strongly to show that the Bankers' Union of the World had, for a valuable consideration, received and enjoyed by it, including the payment of assessments upon the certificate

to the Bankers' Union after the consolidation, undertaken and obligated itself to pay to plaintiff the amount due upon the certificate, and that said obligation was a binding and subsisting one upon defendant. Potter v. Wheat, 53 Texas, 406; Murtain v. Stokes, 90 Texas, 362; Childress v. Smith, 90 Texas, 616; Johnson v. Drought, 22 S. W. Rep., 295; Royall v. Gulf, C. & S. F. Ry. Co., 32 S. W. Rep., 186; Smith v. Bank, 20 S. W. Rep., 1119.

*W. E. Murphy*, for appellee.—1. Corporations possess only such powers as are expressly granted, or such as are necessary to carry into effect the powers expressly granted. There was no power authorizing the consolidation attempted to be made as shown in this case. Rev. Stats., arts. 643, 649, 665; Gen. Laws of Texas, 1899, p. 199, secs. 1-11; Lyons-Thomas Hdwre. Co. v. Perry Stove Mfg. Co., 24 S. W. Rep., 16; Northside Ry. Co. v. Worthington, 30 S. W. Rep., 1055; South Texas Nat. Bank v. La Grange Oil Mill Co., 40 S. W. Rep., 330; Pittsburg, C. & St. L. Ry. Co. v. Keokuk & Hamilton Bridge Co., 118 U. S., 317; Central Transp. Co. v. Pullman Palace Car Co., 139 U. S., 24; Refrigerating Co. v. German Sav. Institution, 175 U. S., 40; Twiss v. Guaranty Life Assn., 87 Iowa, 733, 55 N. W. Rep., 8; Bankers' Union of the World v. Crawford, 73 Pac. Rep., 79; Miller v. A. Mut. Acc. Ins. Co., 21 S. W. Rep., 39; Davis v. Old Colony R. Co., 131 Mass., 258; Home Friendly Society v. Tyler, 9 Pa. Co. Ct., 617; Lauman v. Lebanon R. R. Co., 30 Pa. St., 44; Stamm v. Northwestern Mut. Ben. Assn., 65 Mich., 317; State ex rel. Monitor Fire Assn., 42 Ohio St., 555; Green's Brice, Ultra Vires, 88; 2 Morawetz Priv. Cor., secs. 580, 581, 591, 607, 609; Clark & Marshall, Priv. Corp., sec. 181(b); Niblack on Ben. Soc., secs. 121, 309.

2 No one can estop himself from proving facts which will show a contract to be illegal or opposed to public policy. 15 Am. & Eng. Ency. Law (2d ed.), pp. 1014, 1015, and cases cited; Greenhood on Public Policy, rule 126, p. 115; Keith v. Fountain, 22 S. W. Rep., 191.

NEILL, ASSOCIATE JUSTICE.—This suit was brought on the 12th day of March, 1902, by the appellant, John T. Whaley, against the National Aid Association and the Bankers' Union of the World, to recover $900 and interest as balance due upon the benefit certificate or policy described in our conclusions of fact. It was alleged, as the ground of recovery against the Bankers' Union, that on the 26th of October, 1901, it, for a valuable consideration, agreed with the National Aid Association to pay all just and lawful claims for death and disability losses of its members, and that, by virtue of such agreement, it became obligated to pay plaintiff the amount due on the policy or benefit certificate referred to.

The Bankers' Union, by its answer, specially denied the alleged agreement, and plead that if such agreement was ever made it was unauthorized, *ultra vires* and void. The National Aid Association neither appeared nor answered in the case, and judgment was rendered against it by default. The case as to the Bankers' Union was tried before a jury, whom the court instructed, after hearing all the evidence, to return a verdict in favor of such defendant. From a judgment entered upon

the verdict, returned in obedience to the instruction, this appeal is prosecuted.

*Conclusions of fact.*—The National Aid Association, organized under and by virtue of the laws of the State of Kansas, on the 21st day of February, 1899, issued to appellant and his wife, Caro A. Whaley, a certificate or policy of insurance whereby it promised to pay to the surviving member (being beneficiaries) the sum of $1,000, or such sum as might be derived from one assessment upon all the members of said association. In March, 1901, Caro A. Whaley, appellant's wife, died, all dues and assessments upon the benefit certificate having been paid up to the date of her death. Wherefore, the National Aid Association became liable to appellant on said policy according to its terms in effect.

On October 26, 1901, the National Aid Association, having become largely indebted, and hopelessly insolvent, and unable to pay its outstanding indebtedness, consisting of death claims, salaries, etc., attempted to consolidate with the Bankers' Union of the World, also a beneficiary association, organized under and by virtue of the laws of the State of Nebraska, whose certificate of incorporation is as follows: "The name or title of this society or association shall be 'The Bankers' Union of the World.' The object for which it was formed was, and is, the organization of a fraternal beneficiary society under the laws of Nebraska, as above designated, for the sole benefit of its members and their beneficiaries, and not for profit, and having a lodge system, with ritualistic form of work and a representative form of government."

By the proposition of the Bankers' Union to the National Aid Association, which led to the attempted consolidation, the former offered to assume and pay all liabilities, including death claims, of the latter. The National Aid Association having received the proposition, through its directors, conducted negotiations with the Bankers' Union which led to the execution of a contract in writing purporting to be entered into between the two associations, which was signed by the president and secretary of each, the effect of which was that the management of the two associations should be combined by the resignation of all officers and directors of the National Aid Association and the election in their places of persons for the respective offices selected by the management of the Bankers' Union; that, upon consummation of such consolidation, the Bankers' Union and E. C. Spinney, who was its president and general manager, should assume, and agree to pay, all just and lawful claims for death and disability losses, and all other claims and losses not otherwise provided for against the National Aid Association, which had then or might thereafter accrue; that upon consolidation the National Aid Association should turn over to the combined management of the fraternal order all moneys on hand or in bank, furniture and supplies owned by it, and $1,300 on deposit with the National Security Company of New York. And by which agreement the said Spinney promised to furnish a schedule of the property owned by him of the value of at least $50,000, to the end that the National Aid Association might have a full, complete, satisfactory and conclusive proof of his ability personally to perform his part of the contract.

After this agreement was made, in pursuance thereof the officers of the National Aid Association resigned, and new officers of the Bankers' Union were elected, and all the property mentioned in the agreement, with books, furniture and money on deposit of the National Aid Association, was turned over to the Bankers' Union. And it also executed ten notes, for the sum of $333 each, to the officers of the National Aid Association.

It affirmatively appears from the evidence that there was no authority in the charter of either association, or in the statute of the State, by virtue of which it was incorporated, authorizing either to consolidate or combine with one another or any other association. It does not appear from the evidence that this attempted consolidation or action on the part of the officers and directors of the respective associations was ever ratified by the lodges of the associations in the several States of the American Union to which the members of the association belonged, and which acted for and connected such members with the association to which they respectively belonged.

After the attempted consolidation the Bankers' Union paid appellant, upon the benefit certificate or policy referred to, $100, and never paid him any more afterwards, but refused to pay the balance. The Bankers' Union of the World never, at any time, issued a certificate or policy of insurance to appellant or his wife, Caro A. Whaley, who died eight months before the attempted consolidation, and never received any money or thing of value from either of them, and was under no obligation, other than such as may arise from the facts stated above, to pay them, or either, any sum of money whatsoever.

*Conclusions of law.*—As there was no contract, express or implied, between the Bankers' Union of the World and appellant, upon which the liability of the former can be established in favor of the latter for the demand, or any part thereof, sued on, the liability of appellee, if it exists at all, must necessarily rest upon its attempted consolidation with the National Aid Association, whose benefit certificate or policy appellant holds for the death of his wife.

Corporations have no power to consolidate unless the power is expressly conferred by their charter, or by the charter of one of them, or by some other statute, and the consolidation must be effected in compliance with the terms of the statute. And, when corporations are created by different States, as were those involved in this case, they can only consolidate under concurrent legislation of each State; but in such a case, since the laws of the State have no extra-territorial effect, and can not create or aid in creating a corporation in another State, there is, in law, a separate and distinct corporation in each State when corporations are consolidated by virtue of concurrent legislation.

When a consolidation of corporations has been attempted, but the result of the proceedings, through some defect or want of power, has not been a corporation *de jure,* the rights and obligations accruing will be determined by ascertaining whether a *de facto* corporation has been formed. Unless a consolidation statute in force at the time of the proceedings authorized the proposed consolidation, the result was a nullity, even if there was an attempt in good faith to consolidate, followed by an assumption of corporate powers. (American Loan, etc., Co. v.

Minnesota, etc., Ry. Co., 157 Ill., 641, 42 N. E. Rep., 153.)    An attempt to do that which the law does not permit can produce no result that the law will recognize.    A body which can not become a corporation *de jure* can not become a corporation *de facto*.    The mere *user* of corporate powers which might have been lawfully acquired, without a bona fide attempt to acquire them by forming a consolidation, does not create a consolidated corporation *de facto,* nor does an attempt to organize without *user* have that effect.    An attempted consolidation, when no statute authorizes consolidation, is a nullity; and the corporate existence of a nominally consolidated corporation, formed in the absence of legislative authority for such consolidation, may be collaterally attacked, its acts and contracts are void, and it can not be held liable for the debts of one of the corporations attempting to consolidate. (Noyes on Intercor. Rel., secs. 92, 93; Finnegan v. Norrenberg, 52 Minn., 239, 53 N. W. Rep., 1150; Continental Co. v. Toledo Ry. Co., 82 Fed. Rep., 653; American Loan, etc., Co. v. Minnesota, etc., Ry. Co., 157 Ill., 641, 42 N. E. Rep., 153; Kavanaugh v. Omaha Life Assn., 84 Fed. Rep., 295; Pearce v. Madison, etc., Ry. Co., 21 How. (U. S.), 441; Mansfield, etc., Ry. Co. v. Brown, 26 Ohio St., 223; Mansfield, etc., Ry. Co. v. Drinker, 30 Mich., 124; Tuttle v. Michigan, etc., Ry. Co., 35 Mich., 247; Brown v. Dibble, 65 Mich., 520.)

Appellant's claim can not be based upon an equitable estoppel, for he paid nothing to appellee, nor did it receive anything of value belonging to him, or make any promise or agreement, based upon any consideration, with him.    The appellee is liable, if to anyone, to the National Aid Association for the money and assets received by the former's officers under the agreement of attempted consolidation.    This liability can, and no doubt will, be enforced against appellee and its officers by the receiver of the National Aid Association.    And it is to this association, through its receiver, appellant must look for payment of the amount due on the certificate or policy sued on.

Under the laws of this State, "a fraternal beneficiary association" (such as the Bankers' Union of the World is shown to be) "is declared to be a corporation, society or voluntary association, formed, organized and carried on for the sole benefit of its members and the beneficiaries, and not for profit."    Such associations are required to make provision for the payment of benefits in case of death, etc., and the fund from which such payment shall be made is declared to be a benefit fund, and is derived from assessments, monthly payments, or dues collected from its members.    (Acts of 1899, p. 195, sec. 1.)    Associations coming within the description of section 1 of such Act, organized under the laws of any other State, are admitted to do business in this State when they have complied with certain statutory requirements.    (Secs. 2 and 3 of the Act referred to.)

In the absence of proof of the law under which appellee was incorporated, it must be presumed, for the purpose of correctly disposing of this case, that it comes within the description of section 1 of the Act referred to, and that there are the same limitations upon its corporate powers that are imposed by statute upon such corporations organized under the laws of this State.    (Tempel v. Dodge, 89 Texas, 71.) And any attempt, promise, agreement or undertaking on its part to

divert the benefit fund derived from assessments of its own members from the purpose for which it was provided, and appropriate it to the payment of a benefit certificate or policy issued by another corporation, with which it had no power to consolidate, is *ultra vires* and void.

Therefore, the judgment of the District Court is affirmed.

*Affirmed.*

Application for writ of error dismissed.