## STATE OF OKLAHOMA v. STATE OF TEXAS.

## UNITED STATES, INTERVENER.

### IN EQUITY.

No. 15, Original. Order fixing time for filing suggestions, etc., entered May 5, 1924; argued on suggestions, etc., May 26, 1924.— Decided June 9, 1924.

1. Where a receivership was necessary for the protection of oil and gas lands whose ownership depended upon the establishment of an interstate boundary,—the primary object of the suit,—and the boundary, as finally established, lay between the lines claimed by opposing parties, *held*, that the general expenses of the receivership were apportionable against the several funds derived by the receiver from operation of oil and gas wells, whether on one side or the other of the boundary established, and that funds arising from wells operated by claimants under the receiver's supervision, causing less expense, should be assessed on a lower basis than funds arising from wells operated by him directly. P. 507.

2. In apportioning general receivership expenses against funds derived by the receiver from oil and gas wells operated under his supervision by lessees of the owners, *held*, that the charge should be against each fund as an entirety and be deducted from the owner's and lessee's shares thereof *pro rata*. P. 511.

3. The expense or loss of work done by the receiver in this cause on unremunerative wells in the " River Bed Area,"—said area belong-

ing wholly to the United States,—may be charged against receivership funds derived from remunerative wells in that area.  P. 511.

4. Trespassers who drilled productive and unproductive wells for oil in land of the United States before it was put into the receivership, have no equitable claim to be reimbursed for the cost of the unproductive out of funds derived by the receiver from the productive wells. *Id.*

5. The order hereinbefore made authorizing the receiver, where any well in the said " River Bed Area " was drilled to production prior to the receivership, to repay the cost of the work, (see 256 U. S. 607,) should be amended to include a certain well which was excluded from the order.  P. 512.

6. Where private claimants drilled productive oil wells on land afterwards taken into a receivership and adjudged the exclusive property of the United States, *held,* that a person who, as contractor, participated in drilling one of the wells and whose equipment, so used, was. taken and sold by the receiver, was entitled to an order authorizing the receiver to pay him the proceeds of such sale; but that a wrong committed against him by one of the claimants before the receivership in taking forcible possession of the well and converting part of his equipment could not be adjudicated in this litigation and compensated from funds derived by the receiver from the wells claimed by the aggressor.. *Id.*

UPON consideration of certain questions arising upon a report of the receiver in this cause.

*Mr. W. A. Ledbetter,* with whom *Mr. H. L. Stuart, Mr. R. R. Bell, Mr. Wm. O. Beall* and *Mr. Edward H. Chandler* were on the briefs, for Sinclair Oil & Gas Company, Oklahoma Petroleum & Gasoline Company, National Oil Company and Arkansas City Pipe Line Company.

*Mr. A. H. Carrigan,* with whom *Mr. J. W. Bailey, Mr. Leslie Humphrey, Mr. A. H. Britain, Mr. W. H. Bonner* and *Mr. W. C. Witcher* were on the briefs, for certain owners of patented land.

*Mr. R. H. Ward* for Kirby Petroleum Company.

*Mr. W. W. Dyar,* Special Assistant to the Attorney General, with whom *Mr. Attorney General Stone* and

*Mr. Solicitor General Beck* were on the brief, for the United States.

*Mr. E. P. Hill* for the State of Oklahoma.

*Mr. E. E. Blake* and *Mr. R. L. Cole* for Grand Oil and Developing Company.

*Mr. Leslie Humphrey* for C. T. Taylor.

*Mr. W. A. Keeling,* Attorney General of the State of Texas, for defendant.

Suggestions were also filed by the following: *Mr. Jesse B. Roote,* for Burke Divide Oil Company Consolidated; *Mr. J. H. Cline,* for Tom Testerman; *Mr. K. C. Barkley,* for J. G. Leavell, Receiver of the General Oil Company, and National Petroleum & Refining Company; *Mr. Ben Bruce Blakeney* and *Mr. Francis Marion Etheridge,* for J. B. Lawton, and Ewing Clagett, Receiver for Delta Oil Company; *Mr. H. Rozier Dulany, Jr.,* and *Mr. Alexander H. McCormick,* for the Continental Oil Company; *Mr. Bernard Martin* and *Mr. Ben G. Oneal,* for the Southwest Petroleum Company, the Buckeye Petroleum Company, and James L. Duffy; *Mr. William M. Cannon,* for the Wichita Petroleum Company; and *Mr. T. P. Gore,* for the Melish Consolidated Placer Oil Mining Association and the Double Triangle Petroleum Association et al.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

By the order of May 5 last, *ante,* 76, certain questions suggested in the twelfth report of the receiver in this case were propounded to the parties in interest. Many responses were received, a hearing on them was had, and the Court is now prepared to announce its ruling.

The first question is, to what extent and in what manner shall the general expenses of the receivership be

spread over the several impounded funds in the receiver's custody?

Two areas are within the receivership, one designated as the south half of the river bed and the other as the flood plain. The latter consists of a stretch of low ground between the river bed and the Texas bluffs, and is divided into several relatively small tracts. The impounded funds consist, in the main, of proceeds from oil and gas taken, during the receivership, from wells in the two areas. Accurate accounts have been kept showing the production, proceeds, and special expenses pertaining to each well. But as yet there has been no allocation or apportionment of the general expenses.

At the inception of the receivership both areas were in controversy. Texas and her grantees were claiming title to both; the United States was doing the same, and Oklahoma was claiming title to the river-bed area. These proprietary controversies were largely incidental to a pronounced controversy respecting the true boundary between the two States. Texas was insisting that the boundary was along the middle of the river; Oklahoma and the United States that it was along the foot of the Texas bluffs. All of the controversies were real and were earnestly pressed on the Court's attention. In the progress of the case the Court has considered and decided all of them. As a result it now is settled that the interstate boundary is not along the middle of the river nor along the foot of the Texas bluffs, but on and along the south bank of the river, that the flood-plain area belongs to Texas or her grantees, that the river-bed area belongs to the United States, and that Oklahoma has no proprietary interest in either area.

Most of the river-bed wells were drilled and brought in by the receiver; all wells in that area have been operated by him, and he now holds the net proceeds derived from them. Most of the flood-plain wells were drilled

and brought in before the receivership by claimants asserting grants from the State of Texas or leasehold rights under such grants. Under a provision in the original receivership order (par. 4, 252 U. S. 374) and a provision in a succeeding order (par. 2, 253 U. S. 466) most of the flood-plain wells have been operated by such claimants and their assigns under arrangements whereby the receiver was to direct and supervise the operation, was to receive and hold three-sixteenths of the gross proceeds, and could take over the operation if the arrangement was not respected. The receiver now holds the accumulated three-sixteenths of such proceeds. A few exceptional flood-plain wells—we mean wells south of the interstate boundary as now established—have been operated throughout by the receiver and he now holds the full net proceeds derived from them.

The parties in interest differ about the apportionment to be made of the general expenses. The Texas claimants, both owners and lessees, take the position that, as they have prevailed in the controversy over the flood plain, the funds derived from that area should be exempted from the apportionment. On the other hand, the United States insists that the apportionment should extend to all the funds; flood-plain as well as river-bed, and be on a *pro rata* basis. There is also a difference among the Texas claimants, in that the owners insist that, if the apportionment be made to cover the flood-plain funds, these expenses should be charged against the moneys going to the lessees, while the latter ask that the charge be against the moneys going to the owners.

Obviously we are not here concerned with a situation where the outcome of the matter in litigation should be given controlling significance. The controversy over the flood-plain was real, as much so as that over the river-bed area; and there was ample reason for including both areas in the receivership. Its purpose was to conserve the

oil and gas values in those areas for the benefit of whoever might prove to be entitled to them; and that purpose has been accomplished. That the Texas claimants have prevailed as to the flood-plain is no reason for exempting it from the general expenses. A like reason would require that the river bed be also exempted, for as to it the United States prevailed. The usual rule in such receiverships is to charge the general expenses ratably against all the impounded funds, unless there be special circumstances making it inequitable to do so. Here there are no circumstances calling for an exemption of the flood-plain funds; but there are circumstances making it equitable to charge against them a smaller proportion of the general expenses than is charged against the river-bed funds. Taking the full period of the receivership, the work and responsibility of the receiver's force has been perceptibly less in respect of the flood-plain wells than in respect of those in the river bed. Fairly estimated, we think the difference has been about one to two on each dollar impounded. But this difference in favor of the flood-plain wells applies only to such as have been operated by private claimants. The exceptional ones operated by the receiver are in this particular on substantially the same footing as the river-bed wells.

We conclude that the general expenses should be spread over all the funds in such way that the charge against each dollar impounded from river-bed wells, or from flood-plain wells operated by the receiver,—in all of which the impounding has covered the full proceeds, less special expenses,—shall be double what is charged against each dollar impounded from flood-plain wells operated by private claimants,—where the impounding has covered only three-sixteenths of the proceeds.

As to the Texas owners and lessees, we perceive no ground for making one rather than the other bear the

charge for general expenses. The interests of both have been conserved, and the charge to be made against the total moneys going to both in any instance should be deducted ratably from what goes to each separately.

The second question is, how shall the expense or loss incident to work done by the receiver on river-bed wells which proved unremunerative be distributed or cared for?

The river-bed area is a single tract belonging to the United States. Others have no present interest in it. The United States concedes that the expense or loss indicated may be charged against funds derived from remunerative wells in that area. We think the concession is right and that effect should be given to it.

The third question is, whether the order of June 1, 1921, 256 U. S. 607,—authorizing the receiver, where any river-bed well was drilled and brought into production prior to the receivership, to reimburse the operator for the actual cost of that work out of the proceeds from such well,—shall be enlarged so as to permit the receiver, where the same operator had drilled another river-bed well which proved unremunerative, to reimburse him for the cost of the latter out of the proceeds of the remunerative well. The United States objects to the change suggested, and we think it should not be made. All drilling for oil in the river-bed area was without right and without encouragement from the United States, the owner of the soil. Apart from the trespass involved, the operator assumed the risk of the venture; and if the well proved unremunerative it was his loss. On no equitable principle can he ask to be reimbursed. The order referred to is confined to wells which were utilized by the receiver and enriched the estate in his custody. Even in that form the order is one of marked liberality, considering the entire absence of any right to drill in the river-bed area. The situation requires, we think, that each well be regarded in this matter as a distinct venture.

The fourth question is, should the order just mentioned be changed so as to cover river-bed well No. 139, known as the Burk-Senator well?

This well was expressly excepted from the order because there was a bitter controversy as to who drilled it and brought it into production. The well had been drilled and was producing oil when the receiver took possession. It is the only one of that class where the operator has not been reimbursed. We think the excepting clause should be eliminated from the order to the end that the receiver may effect an equitable adjustment of the matter, if the contesting operators are so disposed.

Two phases of another matter connected with that well should be disposed of at this time. Under a contract with one of the contesting operators Tom Testerman participated in drilling the well. Some equipment belonging to him and used in that work came into the possession of the receiver and afterwards was sold by the receiver. Testerman asks that the receiver be authorized to pay over to him the money received for the property. That authority should be given. Testerman also asserts that the Bass Petroleum Company, another of the contesting operators, forcibly took possession of the well and converted a part of his equipment to its use, and he asks that he be reimbursed for that wrong out of impounded funds derived from flood-plain wells claimed by that company. This request cannot be entertained. The right to redress for such a wrong, committed prior to the receivership, is not a matter which can be considered or determined in this suit.