## GULF, C. & S. F. RY. CO. v. PEARLSTONE MILL & ELEVATOR CO.

### No. 1585—5954.

Commission of Appeals of Texas, Section A.

Nov. 9, 1932.

Terry, Cavin & Mills, of Galveston, and W. P. Donalson, of Dallas, for plaintiff in error.

McCormick, Bromberg, Leftwich & Carrington, W. C. Gowan, and H. L. Bromberg, all of Dallas, for defendant in error.

SHARP, J.

This is an application for an injunction filed by plaintiff in error in the district court of Dallas county, seeking to restrain the defendant in error from prosecuting to judgment certain suits pending in the justice court of precinct No. 7 of Dallas county and from filing and prosecuting suits on a large number of other claims, each of such suits triable in a justice court and unappealable, on account of their respective amounts, from 52 cents, the minimum, to $9.93, the maximum, with a statutory $10 attorney's fee claimed on each, and to compel the defendant in error to prosecute all claims in one suit. These several claims were for damages against plaintiff in error growing out of shipments of wheat. Immediate relief was sought by the issuance of a temporary writ of injunction to restrain defendant in error, both from the prosecution of the suits and from filing separate suits on the other claims.

The district judge. granted a temporary restraining order and set a day for a hearing to determine whether a temporary writ of injunction should issue. When the case was heard, the court refused to grant the writ of injunction. The case was appealed to the honorable Court of Civil Appeals at Dallas, and, pending the appeal, the temporary restraining order was continued in force. By a divided court, Associate Justice Looney dissenting, the judgment of the trial court was affirmed. 37 S.W.(2d) 299.

Plaintiff in error, in substance, contends: Where plaintiff's demands consist of 97 claims for damages, on 3 of which separate suits are pending in the justice court, and on the remainder of which the filing of separate suits in the justice court is threatened, and all of which can be settled in a single action, that a court of equity, in order to prevent a multiplicity of suits and consequent injury, annoyance, harassment, useless consumption of time, and expenditure of money, will enjoin the filing and prosecution, separately, in the justice court, of a large number of suits for damages growing out of similar prosecutions involving identically the same questions of law and similar questions of fact, where no appeal would lie from the judgment of the justice court in any one of such cases, and in all of which the parties, plaintiff and defendant, are the same, and in each of which the defendant has a good, valid, and similar defense.

Briefly stated, the facts are that from November 17, 1928, to March 11, 1930, defendant in error, owner of large grain elevators in the city of Dallas, shipped to consignees over plaintiff in error's railway 98 cars of grain, each car under a separate contract of shipment, with a separate waybill and bill of lading; 76 of these shipments were to consignees in the city of Dallas; 11 to consignees in the city of Fort Worth; 5 to consignees in the city of McKinney; 3 to consignees in the city of Sherman and 3 to consignees in the city of Waco. On each shipment defendant in error claimed a shortage of grain occurring through the negligence of plaintiff in error, of a value varying from 52 cents, the minimum, to $9.93, the maximum. Defendant in error contends that these various shortages were caused in different ways, principally by leaks in cars in transit, by plaintiff in error permitting some wheat to remain in the cars when unloaded, and by wheat working out through open cracks into the space between the walls of the freight cars where it remained when the cars were unloaded.

Plaintiff in error contends that no such shortage actually existed and that the apparent shortage was the result of the inaccuracy of defendant in error's weights. In each shipment defendant in error first weighed on scales owned by it the empty car, loaded it with grain, and then weighed the loaded car, and, by subtracting the weight of the empty car from the weight of the loaded car, arrived at what is claimed to be the weight of the grain loaded into the car. These weights were presented to plaintiff in error, accepted by it as the weight of the wheat, and placed this net weight on the bill of lading as representing the amount of grain in the car. When the car was received by the consignee, the loaded car was weighed on the consignee's scales, then unloaded, the empty car again weighed, and, by subtracting the weight of the empty car from the weight of the loaded car, the consignee arrived at the weight of the wheat received from defendant in error. In each of the 98 shipments the net weight of the consignee was less than defendant in error's net weight. Defendant in error accepted the consignee's weight as the amount of grain received on each shipment as correct, and, by subtracting consignee's net weight from its own weight, arrived at the alleged shortage. In all but three or four of the cars the tare or empty car weight as determined by the scales of consignee was greater than such weight as determined by the scales of defendant in error. Plaintiff in error contends that this difference in the weights of the empty cars is conclusive proof of its alleged inaccuracy in defendant in error's weights; while defendant in error contends that the difference is caused either by the fact that plaintiff in error permitted some wheat to remain in the car after it was unloaded, or by the fact that wheat had sifted through openings in the inner wall of plaintiff in error's cars and remained unloaded between the walls of such car, thereby causing the increased weight of the empty car when weighed on the consignee's scales. Plaintiff in error in its petition for injunction alleged that it had a valid defense to each suit. For a more detailed statement of the case, we refer to the opinions rendered by the Court of Civil Appeals.

Thus it is seen that defendant in error held 98 separate claims against plaintiff in error and that suits were filed in the justice court on 4 of these claims. In each suit recovery was asked for damages and $10 attorney's fee. One suit was tried, resulting in judgment for defendant in error against plaintiff in error for $1.21 damages, $10 attorney's fee, and $4.40 court costs. Judgment was paid; hence that claim is not involved here, but defendant in error is demanding trial of the 3 remaining suits and is threatening to file separate suits in the justice court on the other 94 claims, in each of which judgment will be sought not only for the damages claimed, but for $10 attorney's fee and costs of suit. From these judgments no appeal will lie.

The distinctions between law and equity

have never obtained in Texas. The extent to which courts of equity will go in enjoining actions at law for the purpose of preventing a multiplicity of suits can be determined by no arbitrary rule. No ground of equity jurisdiction is more firmly established than the prevention of a multiplicity of suits, but there is much conflict among the decisions in its proper application to particular cases. The authorities announce the following general rules which are applied in this state in order to prevent a multiplicity of suits:

(1) "That the courts may take cognizance of a controversy, to determine the rights of all the parties, and grant the relief requisite to meet the ends of justice in order to prevent a multiplicity of suits." Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 243; [Galveston, H. & S. A.] Ry. Co. v. Dowe, 70 Tex. 5, 7 S. W. 368; Steger & Sons Piano Mfg. Co. v. MacMaster, 51 Tex. Civ. App. 527, 113 S. W. 337 (writ denied); 17 Texas Jur. § 14, p. 15, etc., and cases cited; 21 C. J. § 48, p. 71; 10 R. C. L. § 24, p. 281.

(2) "Where, from the nature of the wrong and from the settled rules of the legal procedure, the same injured party, in order to obtain all the relief to which he is justly entitled, is obliged to bring a number of actions against the same wrongdoer, all growing out of the one wrongful act and involving similar questions of fact and of law." Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 245; 21 C. J. § 48, p. 71.

(3) "Where the dispute is between two individuals, A and B, and B institutes or is about to institute a number of actions either successively or simultaneously against A, all depending upon the same legal questions and similar issues of fact, and A by a single equitable suit seeks to bring them all within the scope and effect of one judicial determination." Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 245; 21 C. J. § 48, p. 71.

(4) "It is a fundamental principle that equity takes jurisdiction where it is made necessary to administer a preventive remedy, or when the courts of ordinary jurisdiction are made instruments of injustice, or when the right of action is given by law, but the remedy allowable by the court within its jurisdiction is inadequate to meet the demands of justice." Brown on Jurisdiction (2d Ed.) § 196, and cases cited; Houston Heights Water & Light Ass'n v. Gerlach (Tex. Civ. App.) 216 S. W. 634.

For a general discussion of this subject, we refer to the following authorities: Pomeroy's Equity Jur. (4th Ed.) §§ 243–275; 10 R. C. L. §§ 24–31; 21 C. J. §§ 48, 49, 50, 51, pp. 75, etc.; Illinois Central R. Co. v. Baker, 155 Ky. 512, 159 S. W. 1169, 49 L. R. A. (N. S.) 496; Jordan v. Tel. Co., 69 Kan. 140, 76 P. 396; Southern Pac. Ry. Co. v. Robinson, 132 Cal. 408, 64 P. 572, 12 L. R. A. (N. S.) 497.

In the light of the foregoing general rules, the facts alleged by plaintiff in error call for the exercise of the equitable power of the district court to prevent defendant in error from bringing a separate suit upon 97 distinct claims in the justice courts, from which no appeal will lie and in which the court costs and attorney's fees will be out of proportion to the amounts involved and from which actions plaintiff in error will have no means of protecting itself against the attempted wrong, except by resort to the writ of injunction. The entire transactions upon which the claims are based are between the same plaintiff and the same defendant. The claims arose under uniform bills of lading issued under articles 890 and 891, R. S. 1925. The main controversy turns upon the accuracy of defendant in error's weights. The weighing was all done by two employees of defendant in error, and the 97 shipments were made in 43 separate days. Therefore it seems that the facts surrounding the scales and the accuracy of the weighing of the grain could be ascertained without any unnecessary trouble or confusion. We conclude that the remedy sought by plaintiff in error is a just and proper relief to it, and will work no unnecessary hardship upon defendant in error, who can set up its demands and have its rights determined in one suit and at no unnecessary increase in expenses or annoyance to it. As showing the tendency of the courts of this state to exercise their equitable jurisdiction to prevent a multiplicity of suits, Chief Justice Gaines, in rendering the opinion of the Supreme Court in the case of Galveston, H. & S. A. Railway Co. v. Dowe, 70 Tex. 5, 7 S. W. 368, 371, held: *"Our system of procedure is essentially equitable in its nature, and was designed to prevent more than one suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy. Chevalier v. Rusk, Dallam Dig. 611; Binge v. Smith, Dallam Dig. 616; Clegg v. Varnell, 18 Tex. 294."* (Italics ours.)

In the case of Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 252, 47 L. Ed. 380, it is said: "Each case, if not brought directly within the principle of some preceding case, must, as we think, be decided upon its own merits and upon a survey of the real and substantial convenience of all parties, the adequacy of the legal remedy, the situations of the different parties, the points to be contested, and the result which would follow if jurisdiction should be assumed or denied; these various matters being factors to be taken into consideration upon the question of equitable jurisdiction on this ground, and whether within reasonable and fair grounds the suit is calculated to be in truth one which will practically prevent a multiplicity of litigation, and will be an actual convenience to all par-

ties, and will not unreasonably overlook or obstruct the material interests of·any."

There is a marked distinction between invoking the equity jurisdiction of a court to prevent a multiplicity of suits by different plaintiffs each having a separate, distinct, meritorious cause of action, and invoking this jurisdiction to prevent a multiplicity of suits, based upon many claims held by the plaintiff against the defendant, where the amounts are small, are similar in nature, grow out of the same general source, involve similar facts, and may be settled in one suit, and about to be filed in a court of limited jurisdiction from which no appeal will lie. The record shows that the aggregate sum representing all the. remaining 97 claims of defendant in error, payment of which is demanded by it, is approximately $342.20, in addition to which the company is adding and threatening to sue for the further sum of $10 attorney's fee on each such claim, or $960. If defendant in error should be permitted to file a separate suit on each claim in the justice court, and no matter what defense plaintiff in error might have to each claim, that it would be put to the expense, inconvenience, and costs of defending this multiplicity of suits, and, after being put to this hardship, the defendant in error could recover a judgment on each claim for the amount thereof, a $10 attorney's fee, and court costs amounting to more than each claim, from which no appeal would lie, and compel the payment of these judgments, from which there would be no relief, in our judgment would produce an intolerable condition of affairs, and would be violative of the sound rules announced to prevent a multiplicity of suits.

As holding contrary to the rule announced in this opinion, the following cases are cited: St. Louis, Southwestern Ry. Co. v. Woldert Grocery Co. (Tex. Civ. App.) 162 S. W. 1174; Chicago, R. I. & G. Ry. Co. v. Elevator Co. (Tex. Civ. App.) 182 S. W. 355. Any holding in those cases or similar cases contrary to the rule announced herein is expressly overruled.

■ Defendant in error bases its claim for attorney's fees in each suit upon article 2226, R. S. 1925, which, among other things, provides that any person having a valid claim against a person or corporation for lost or damaged freight may present the same to such person or corporation; and if, at the expiration of thirty days thereafter, the claim has not been paid or satisfied and he should finally obtain judgment for the full amount thereof as presented for payment, he may also recover, in addition to his claim and costs, a reasonable amount as attorney's fees not to exceed $20, if represented by an attorney.

The evident purpose of the foregoing article is to effect a prompt settlement of small but well-founded claims, and to prevent groundless defenses which ofttimes defeat the ends of justice. The allowance is confined to a reasonable attorney's fees, not exceeding $20, where an attorney is actually employed; the amount to be determined by the court or jury trying the case. Unquestionably, the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses, not otherwise recoverable "in addition to his claim and costs." The payment of an attorney's fees is a necessary consequence of the litigation, and some one must pay it. It is·reasonable to impose it upon the party whose refusal to pay the just claim renders the litigation necessary. An allowance of ordinary costs to the successful party rests upon the same principle.

■■ Under this article, a person to be entitled to attorney's fees, in the event separate suits are filed upon each claim, must obtain judgment for the full amount of the claim as presented. When the cases and claims are consolidated and tried in one suit, it would rest with the court or jury trying the case to determine upon all the facts, taking into consideration the aggregate amount of the claims and the time employed in procuring the testimony and trying the case, what is a reasonable attorney's fee for the services rendered with respect to the items wholly recovered as presented.

We therefore recommend (1) that the judgment of the Court of Civil Appeals and of the. trial court be reversed, and (2) that the three suits now pending in the justice court of precinct No. 7 of Dallas county, Tex., and any and all other causes of action constituting the 94 claims above referred to, where suit is filed thereon, be consolidated in one suit for trial in a court of competent jurisdiction.

CURETON, C. J. •

Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded, with instructions, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.