**CRAVENS et al. v. ADAMS et al.**

No. 8409.

Court of Civil Appeals of Texas. Austin.

April 29, 1936.

Rehearing Denied May 27, 1936.

G. R. Lipscomb, of Fort Worth, and James R. Boyd and Cofer & Cofer, all of Austin, for appellants.

Smith & Eplen, of Abilene, and Geo. W. Barcus, of Waco, for appellees.

BLAIR, Justice.

This suit was instituted in the Ninety-Eighth district court of Travis county, Tex., by appellants, H. L. Cravens, Dessie Rock, W. H. Carpenter, Maurine Durham, M. C. Driscoll, and the Texas Benevolent Association, a state-wide mutual assessment life insurance corporation, operating under the provisions of chapter 245, p. 856, Acts Reg. Sess. 43d Leg. 1933 (see article 4859f, Vernon's Ann.Civ.St.), with its principal place of business in Brownwood, Brown county, against some 200 defendants residing in all parts of Texas, one of whom, R. L. Taylor, resides in Travis county, seeking to temporarily, and upon final hearing to permanently, enjoin the defendants, their agents and attorneys, from maintaining and prosecuting such suits as had already been filed by some of the defendants in several counties, from filing any additional suits against appellants; and to enjoin the defendants L. M. Dorman and W. H. Cleveland from soliciting and instigating litigation in behalf of the defendants against appellants. As grounds for the injunctions, appellants alleged that all of the defendants, except the attorneys, and Dorman and Cleveland, Mary Price and Tom McWhorter, were the beneficiaries named in policies of insurance issued either by the Central Benevolent Association of Texas, or the Benevolent Association of Texas, both of which, in quo warranto proceedings theretofore instituted in said Ninety-Eighth district court by the Attorney General of Texas, had been adjudged insolvent, their corporate charters forfeited, their assets finally distributed by a receiver who had been finally discharged; and that, since the claims of all said defendant beneficiaries had been fully determined and adjudicated by the judgments in the quo warranto proceedings, said judgments were res judicata of such claims, and the judgments were pleaded both in bar and in estoppel of the claims asserted, or threatened to be asserted, by the defendant beneficiaries and their agents and attorneys.

Appellants further alleged that the cause of action for the wrongful acts, fraud, or conversion of assets by Cravens and Carpenter as officers of the insolvent corporations, or by the appellant the Texas Benevolent Association, could not be prosecuted by the defendants, but could only be prosecuted by the insolvent corporations or their receiver; and that, since the claims of the defendants grew out of the identical wrongful acts, fraud, or conversion by Cravens, Carpenter, or the insurance corporations involved, the court should enjoin them from

prosecuting their suits separately, and should exercise its equity power and prevent the filing and prosecution of a multiplicity of suits, and should require the bringing of one suit to determine the right of all defendants whose claims grew out of the same wrongful acts, fraud, or conversion.

On an ex parte hearing a temporary injunction was granted restraining the defendants who had filed suits from prosecuting such suits; and the other defendants were restrained from instituting any suits against appellants; and Dorman and Cleveland were restrained from soliciting or instigating litigation in behalf of defendants against appellants. The writ of injunction was made returnable to the Ninety-Eighth district court of Travis county, the court issuing the writ, but no date was set for the hearing thereon.

The defendants who had filed suits in several counties and their attorneys filed jointly a plea to the jurisdiction, on the ground of former suits filed by them in courts of equal jurisdiction and dignity, which was overruled; and they, together with several other defendants, some thirty odd in all, filed a general demurrer and special exceptions, which were overruled. They then filed an answer, which was considered as a motion to dissolve the temporary injunction, and by which they (appellees here) alleged that the claims of appellees and all of the defendants were based upon policies of insurance issued by the Central Benevolent Association of Texas, or the Benevolent Association of Texas, or by the former and the liabilities of which had been assumed by the latter; or that they were based upon policies issued by some other mutual insurance company and the liabilities of which were assumed either by the Central Benevolent or the Benevolent Association, or both; that the Central Benevolent Association was acquired by appellants H. L. Cravens and W. H. Carpenter in the early part of 1932, who became the owners and officers of the same, which they continued to operate until the latter part of 1933; that in March, 1932, they acquired and became the owners and officers of the Benevolent Association, which they operated until the latter part of 1933; and that about September, 1933, they acquired and became the owners and officers of appellant the Texas Benevolent Association, at which time each of the said three state-wide mutual assessment associations had been or was then owned, managed, and officered by the said Cravens and Car-

penter; that, after Cravens and Carpenter acquired the Benevolent Association, they transferred, and caused to be transferred, from the Central Benevolent Association to the Benevolent Association practically every desirable risk, leaving only the policy liabilities of defendants, with no means of paying same; and that a similar procedure was followed by them when they acquired the Texas Benevolent Association; that, since Cravens and Carpenter were the officers and owners of the three said associations at or during the time involved, knowledge to them was knowledge to the associations; and that, the appellant the Texas Benevolent having knowledge of said fraud practiced upon appellees, it became liable in the amount of the policies held by them in either of said associations; and that, since the appellees' claims are based upon fraud for the fraudulent transfer of the said memberships, being the assets of the first two named associations to the Texas Benevolent Association, which knowingly received such assets, it is liable for the liabilities. In the alternative, it was alleged that, if the Texas Benevolent Association was not liable, then the officers Cravens and Carpenter who perpetrated such fraud were liable because of such fraud; and, in addition thereto, because at each time the members were transferred they were counted as new members, and the said Cravens and Carpenter received the entire assessments of the members transferred for the next three months as compensation for securing new members, together with 40 per cent. of all dues or assessments collected thereafter; and, further, that, when appellants Cravens and Carpenter sold appellant the Texas Benevolent Association, to appellant M. C. Driscoll, in the early part of 1934, the consideration was another three months' dues or assessments paid by the members, which amounted to some $45,000 or $50,000, or more. In substance, these were the same matters and facts alleged by each defendant in his or her separate suit filed in other counties of Texas.

By further special pleadings, appellees plead the specific facts showing that the matters adjudicated by the judgments in the quo warranto proceedings were not res judicata of the issues and matters sought to be adjudicated by appellees, because none of the appellants or their privies in the claims of appellees or the defendants in this suit were parties to the quo warranto proceedings; and because

880

of want of identity of things sued for, of causes of action, of quality of the persons, and of the issues adjudicated; and because the evidence offered in the quo warranto proceedings was entirely different from that offered in the asserted claims of appellees or defendants.

By alternative pleas, appellees alleged that eleven of the claims adjudicated in the quo warranto proceedings had later been paid by the Texas Benevolent Association, which thereby admitted liability for all other similar claims, and that it should now be estopped to deny the claims of appellees. And further in the alternative appellees pleaded that appellant the Texas Benevolent Association was nothing more than a continuation of the Central Benevolent Association and the Benevolent Association, and that it owes all the claims of defendants which were approved and allowed in the quo warranto proceedings, to wit, $180,500.

At the hearing to dissolve the temporary injunction, the evidence of appellees showed that the Central Benevolent Association of Texas was acquired by Cravens and Carpenter in the early part of 1932; that they were the president and secretary, respectively, of said association, which they owned and controlled until about March, 1933, when they resigned, at which time the association had a large membership and owed only a few claims; that about December, 1932, the said Cravens and Carpenter acquired the Benevolent Association of Texas, and became the president and secretary, respectively, of said association, and the owners and managers of it, which they continued to operate until about July, 1933, when they resigned, and at which time the association had some two or three thousand members; that about August, 1933, the said Cravens and Carpenter acquired the charter of a "Friend-In-Need" society, and in September, 1933, changed its name to the Texas Benevolent Association of Texas, which they incorporated and qualified September 20, 1933, under the provisions of said chapter 245, p. 856, Acts 1933, with a membership of 4,280; that they continued to own and operate said association until March, 1934, when they sold it to appellant M. C. Driscoll, of Houston, for the consideration of three monthly premiums to be paid by the policyholders; and, according to the admission of Cravens they received between $45,000 and $50,000 as the result of the sale.

The evidence of appellees tended to show that Cravens and Carpenter caused the desirable members or risks to be transferred from the Central Benevolent Association to the Benevolent Association, and from it to the Texas Benevolent Association; but did not transfer undesirable members or any liabilities such as the claims of appellees; that each transfer was made without the knowledge or consent of the members, and no change was made except the notices of premiums or assessments due would read in favor of the assignee association; that each time such a transfer of members would be made Cravens and Carpenter would take the first two or three months' premiums or assessments paid by the members, and would then take 40 per cent. of all dues, premiums, or assessments thereafter paid by the members; and, as consideration for selling the last-acquired association, appellant the Texas Benevolent Association, to M. C. Driscoll, they received another three months' premiums or assessments, admitted to be approximately $50,000.

The parties to the quo warranto proceedings, which were instituted by the Attorney General on April 7, 1934, were the Central Benevolent Association and C. A. Mitchell, its secretary, and the Benevolent Association and its secretary, Coy McIntosh. None of the appellants was party to the quo warranto proceedings; nor were any of the defendants or appellees, except as they may have been represented by the receiver, who notified these 200 defendants to file their claims informally, because it looked "gloomy" for them. Some of them filed their claims, but most of them did not. The 200 or more defendants in this suit were listed as claimants in the report of the receiver, and their claims were approved and allowed as the beneficiaries named in the policies in the quo warranto proceedings for the total sum of $180,-500.

The judgments in the quo warranto proceedings further decreed that both the Central Benevolent Association and the Benevolent Association were insolvent and forfeited their charters; and that their affairs were so commingled the court could not allocate to each any definite amount of funds on hand, or the liabilities due,

and adjudged the assets and liabilities half and half, and that the assets were negligible, amounting to a little more than $900; and, after paying the costs out of this sum, the remainder thereof was awarded to the receiver for his services, and the receivership and quo warranto proceedings were closed and the receiver discharged by final judgments entered several terms prior to the filing of this suit by appellants.

After the hearing on the above pleadings and evidence, the trial court dissolved the temporary injunction theretofore issued, except as to the portion restraining L. M. Dorman and W. H. Cleveland from practicing alleged maintenance and barratry; from which action no appeal was taken. However, the injunction was continued in force pending this appeal, except the defendants were permitted to file, but not prosecute, any suit or suits that they might have against appellants.

By this appeal appellants seek to have the order dissolving the temporary injunction set aside upon three grounds, contending as follows: (1) That the judgments in the quo waranto proceedings are res judicata of the claims of all the defendants, and that the court rendering such judgments may in this ancillary proceeding enforce and make effective its said judgments by injunction; (2) that none of the defendants, except those against whom appellants took a nonsuit, were asserting any independent cause of action against appellants, but the causes of action asserted by them were identical and each grew out of the alleged wrongful acts, fraud, or conversion of the appellants against the two corporations which had been adjudged insolvent and their charters forfeited, and that said cause of action for such wrongful acts, fraud, or conversion was the exclusive property of said corporations, and could only be asserted by the corporations or the receiver of such corporations; (3) that the causes of action asserted, or threatened to be asserted, by the defendants were identical and grew out of the alleged wrongful acts, fraud, or conversion by appellants against the corporations which had been adjudged insolvent, and that, if the defendants named had any claims, they grew out of the same wrongful acts, fraud, or conversion by appellants, and that, since defendants had filed, and were threatening to file, individual suits all over Texas against appellants, based upon said alleged wrongful acts or fraud, or conversion, the court under its general equity power had the right and authority to enjoin and prevent the filing and prosecution of a multiplicity of suits against appellants.

We have reached the conclusion that the injunction prayed for by appellants cannot be sustained on either of the first two grounds, but should and must be sustained on the third ground urged by them.

It is manifest that the judgments in the quo warranto proceedings are not res judicata of the claims of the defendants; nor is this suit by appellants ancillary to such proceedings.

█ In order for the defense of res judicata to be available, either in bar or estoppel, the facts must bring the case within the well-established rule or doctrine of res judicata. The main principles of this rule or doctrine are stated in 26 Tex.Jur. 14, § 354, as follows:

"There are two situations in which a judgment rendered in a previous suit between the parties may be pleaded as res judicata. These are: (1) when the first suit was based upon the same claim or demand as the second; and (2) when the first suit was not based upon the same claim or demand as the second, but nevertheless involved the determination of some matter that is in issue therein. In the first situation, the judgment is said to be pleaded, 'in bar,' while in the second it is said to be pleaded as an 'estoppel.' There is a well-recognized difference, noted in all the leading decisions, between the operation and effect of the judgment in each case. In the first case, the judgment, if rendered on the merits, constitutes an absolute bar to prosecution of the second suit. 'It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In other words, its effect as an estoppel extends

merely to particular issues, and its operation as such is to inhibit a re-examination of any issue that it necessarily determined."

The quo warranto proceedings merely adjudicated the state's right to forfeit the charters of the two insurance corporations, because they were insolvent, were violating the law, and were issuing worthless policies. The parties to those proceedings were the state, the two insurance companies, and the two individuals who were the secretaries of the two insurance companies. These were not the officers who were alleged to have done the wrongful acts or committed the fraud, or converted the funds or assets of the corporations prior to the receivership. Those officers were some of the appellants. None of the appellants was party to the quo warranto proceedings. Nor were any of the defendants parties except in so far as the receiver may have represented them. The claims of the defendants in this suit, based upon fraud or conversion of the assets of the two corporations, were not adjudicated in any manner in the quo warranto proceedings; nor was the personal liability of the appellant officers involved adjudicated in the quo warranto proceedings. So far as the record discloses neither the receiver nor any of the claimants nor defendants in this suit had any knowledge of the alleged wrongful acts or fraud of Cravens and Carpenter as the officers of the insurance corporations involved, nor of the alleged conversion of the assets by either one or the other corporation, or by Cravens and Carpenter prior to the final judgments in the quo warranto proceedings.

These facts do not show identity of (1) the things sued for, (2) cause of action, (3) persons, and (4) quality of persons, all of which must appear before the judgments in the quo warranto proceedings can be pleaded as res judicata and in bar of the claims of the defendants asserted in this suit, or in the suits filed or threatened to be filed by them. Nor do the facts stated show identity of (1) persons, (2) quality of persons, and (3) issues or points controverted, all of which must appear in order that the judgments in the quo warranto proceedings may be pleaded in estoppel of the claims of defendants asserted in this suit, or in the suits filed by some of them, or threatened to be filed by others of them.

It is also manifest that this suit of appellants is not ancillary to the quo warranto proceedings, because such proceedings had adjudged the two corporations insolvent, forfeited their charters, distributed such assets as were found by the receiver, and closed the receivership by final judgments entered at a prior term of the court. Appellants made no motion to set aside or vacate the orders or final judgments granting the receiver's discharge. Nor could such final judgments closing the receivership and discharging the receiver be set aside or vacated after the term at which they were entered had ended, except possibly by a direct proceeding showing good cause or grounds therefor. Reardon v. White, 38 Tex.Civ.App. 636, 87 S.W. 365; King v. Hiawatha Silk Mills (C.C.A.) 296 F. 907; 53 C.J. 90, § 109. In fact, appellants allege and contend in this suit that the quo warranto judgments were final and res judicata of the claims of all the defendants named. But they do not seek to reopen the receivership so that the receiver might bring a suit based upon the claims of defendants, that appellants were liable as alleged because of wrongful acts, fraud, or conversion of assets by Cravens and Carpenter, or the corporations which they owned, managed, and officered at the time such matters occurred.

Since the judgments in the quo warranto proceedings were final, it follows that appellants' second ground for the injunction cannot be sustained, because it is obvious that, when the corporations were put out of business and their receiver discharged by final judgments, neither the corporations nor the discharged receiver could bring a suit based upon the wrongful acts, fraud, or conversion of the assets by Cravens and Carpenter, or by appellant the Texas Benevolent Association. It is true that the receiver could have brought the suits to recover the assets of the insolvent corporations which were alleged to have been converted prior to the receivership, if he had known about such wrongful acts, fraud, or conversion. Smith v. Texas & N. O. R. Co., 101 Tex. 405, 108 S.W. 819; Whaley v. Bankers' Union of the World, 39 Tex. Civ.App. 385, 88 S.W. 259; Barthold v. Thomas (Tex.Com.App.) 210 S.W. 506; Oklahoma v. Texas, 265 U.S. 505, 44 S.Ct. 604, 68 L.Ed. 1152. But the undisputed record shows that he had no notice of such alleged wrongful acts, fraud, or conversion before his final discharge. Obviously, the

cause of action for such converted assets remained the property of the defunct corporations, or of the defendants whose unpaid claims in the sum of $180,500 were allowed and approved in the quo warranto proceedings and receivership against such corporations. The defendants, therefore, have the right to prosecute a cause of action of some character to fix the liability of appellants, if any, for their pro rata of any amount that may be recovered because of the alleged wrongful acts, fraud, or conversion of assets of the defunct corporations by appellants.

■ We have reached the conclusion, however, that the equities are such in this case as required the trial court to exercise its equitable jurisdiction to prevent the filing and prosecution of a multiplicity of suits growing out of the same cause of action or subject matter of litigation. There are about 200 defendants named in this suit. They are the beneficiaries named in policies of life insurance issued by either the one or the other of the insolvent corporations; each of their claims having been approved and allowed in the quo warranto and receivership proceedings. Nothing was paid on their claims because the receiver found no assets belonging to the insolvent corporations, except the small amount used to pay the receivership expenses. These 200 defendants reside in all parts of Texas, one of whom resides in Travis county, where this suit is filed. Several of them have filed individual suits against appellants in several different counties, which suits were each based upon and grew out of the same alleged wrongful acts, fraud, or conversion of assets either by Cravens and Carpenter as officers of the corporations or by the corporations themselves. In this suit appellees allege that appellant the Texas Benevolent Corporation is insolvent, and therefore any funds or assets of the two·first named corporations which it may have converted would necessarily have to be prorated between the 200 defendants. In neither of the individual suits heretofore filed by several of the defendants were the other defendants whose claims had been approved in the receivership proceedings made parties. This is the first suit in which all parties, both plaintiffs and defendants, who have an interest in the subject-matter of the cause of action for the wrongful acts, fraud, or conversion of assets, either by Cravens and Carpenter as officers, or the appellant the Tex-

as Benevolent Association, have been made parties, or in which a final and complete judgment could be rendered as between all parties having an interest in the subject-matter of the litigation. It is therefore manifest that it would be inequitable to require appellants to answer and defend numerous suits filed in numerous counties and courts in all parts of this state, each of which grew out of the same cause of action or subject-matter of litigation, and in neither of which have all parties having an interest in the cause of action or subject-matter of the litigation been made parties. The filing of, and the threatening to file, more like suits necessarily create a multiplicity of suits and a threatened multiplicity of suits.

The law is settled in this state that a court of equity jurisdiction may award an injunction for the purpose of preventing or avoiding a multiplicity of suits. The rule is founded upon the salutary reasoning that "our system of procedure is essentially equitable in its nature, and was designed to prevent more than one suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy." Galveston, H. & S. A. Ry. Co. v. Dowe, 70 Tex. 5, 7 S.W. 368, 371; Gulf, C. & S. F. Ry. Co. v. Pearlstone Mill & Elevator Co. (Tex.Com.App.) 53 S.W.(2d) 1001.· And, since the district court of Travis county was the first court to acquire jurisdiction of the cause of action or subject-matter of this litigation and of all parties necessary to a final judgment in the cause of action growing out of the same wrongful acts, fraud, or conversion of assets, such district court may exercise its equity jurisdiction to avoid a multiplicity of suits, and may dispose of the whole subject-matter of the litigation and adjust all rights and equities between the parties. Cleveland v. Ward, 116 Tex. ·1, 285 S.W. 1063.

The order of the court setting aside the temporary injunction is reversed, and such injunction is continued in force and effect pending the final adjudication of the subject-matter of this litigation.

Reversed and rendered.

## On Appellees' Motion for Rehearing.

Appellees complain ·in their motion for a rehearing that we erred in holding that their threatened suits were based alone upon the wrongful and fraudulent acts of

884

the appellants. We did not so hold, but accepted appellees' statement as to their suits, as follows:

"Appellees' claims are based (1) upon fraud, for the memberships of The Central & The Benevolent have been in effect stolen; and (2) The Texas having knowingly received said memberships—being the assets—is liable for the liabilities. In the alternative, if the Texas is not liable, then the officers who perpetrated such fraud are liable."

Nor did we undertake to pass upon the suit of any defendant who based his claim alone upon a policy issued by the Texas Benevolent Association, or upon the payment of assessments to the Texas Benevolent Association under such circumstances as would show that such a defendant's deceased had been considered as being insured by the Texas Benevolent Association. In fact, appellants were permitted to take a nonsuit as to several such defendants. The motion for a rehearing is overruled.

Overruled.